731 So.2d 1037 (1999)
Dr. Cecil J. BERGERON, et al.
v.
PAN AMERICAN ASSURANCE CO., Pan American Life Insurance Company, et al.
No. 98-CA-2421.
Court of Appeal of Louisiana, Fourth Circuit.
April 7, 1999.
*1038 Jules B. LeBlanc, III, Jody Edward Anderman, LeBlanc, Maples & Waddell, L.L.C., Baton Rouge, Louisiana, Counsel for Plaintiffs/Appellants.
Salvador Anzelmo, Brian Burke, New Orleans, and Albert H. Hanemann, Jr., Darryl J. Foster, Lemle & Kelleher, L.L.P., New Orleans, and James F. Jorden, Waldemar J. Pflepsen Jr., Jerome V. Bolkcom, Jorden, Burt, Boros, Cicchetti, Berenson & Johnson, L.L.P., East Washington, D.C., and Raymond J. Munna, Pan-american Life Insurance Co., New Orleans, Counsel for Defendants/Appellees.
Court composed of Chief Judge ROBERT J. KLEES, Judge STEVEN R. PLOTKIN, Judge CHARLES R. JONES.
PLOTKIN, Judge.
Plaintiffs, Dr. Cecil J. Bergeron and Donald C. Mitchell, appeal a trial court judgment dismissing their proposed class action suit against defendants, Pan American Assurance Co., Pan-American Life Insurance Co. (hereinafter referred to collectively as "Pan American"), and insurance agents, Paul Davidson and Diana DeCharles. For the reasons explained below, we affirm.

I. Facts
The suit filed by the plaintiffs alleges three counts of misconduct and misrepresentations in the sale of life insurance against Pan American and insurance agents, Mr. Davidson and Ms. DeCharles. The plaintiffs characterize those counts as follows: (1) "vanishing premium," (2) "churning," and (3) insurance sold as "investments." The plaintiffs' extensive petition asserts the following types of tort claims: (1) unfair and deceptive trade practices, (2) breach of fiduciary duty, (3) breach of duty of good faith and fair dealing (4) negligent misrepresentations and omissions, (5) fraud, (6) and fraud in the inducement; the plaintiffs also assert a breach of contract claim. However, at oral argument in this court, the plaintiffs conceded that neither Louisiana's Unfair *1039 Trade Practice Act nor LSA-R.S. 22:1220, imposing a fiduciary duty and a duty of good faith and fair dealing, applies to this case. Thus, the only tort issues remaining before this court are the claims for negligent misrepresentation and omissions, fraud, and fraud in the inducement. The breach of contract claim also remains.
The allegations of the plaintiffs' suit may be summarized as follows: Pan-American and its agents falsely represented to potential policy holders that they could obtain life insurance policies through payment of a single premium or a limited number of premiums. Expenses, mortality costs, and commissions were not disclosed, nor was the "extremely interest sensitive nature" of the policies. Moreover, defendants allegedly approached potential policy holders, asking to be allowed to examine their finances as "advisors," then made recommendations that existing policies be "exchanged" or "upgraded," in ways that were not in the best interests of the policy holders. Finally, the defendants allegedly indicated that the dividends on the new policies were so high that they made excellent investments.
After the filing of the petition, the plaintiffs sought discovery of certain files from Pan American. Pan American filed peremptory exceptions of prescription, no cause of action, and no right of action, as well as a motion for summary judgment. The trial court stayed discovery pending the disposition of the defendants' exceptions and motion. Following hearing on the exceptions and the motion, the trial court dismissed plaintiffs' claims with prejudice, stating orally as follows: "For the reasons articulated in the defendant's original memorandum, their oral argument and their response, the Motion and Exceptions of the defendant are hereby granted." The plaintiffs failed to request reasons for judgment, and no other reasons were articulated. The plaintiffs appeal.
On appeal, the named plaintiffs make numerous arguments concerning the nebulous nature of the trial court's judgment. They suggest that the trial court should have issued more specific reasons for judgment, but do not allege that they made any formal request for such reasons. Because the trial court's statements indicate that she considered all of the exceptions, as well as the motion for summary judgment, valid, we must consider all issues, unless we find that one particular issue is dispositive.

II. Discovery
As a preliminary matter, the plaintiffs claim that the trial court improperly stayed discovery pending disposition of the defendants' exceptions and motion for summary judgment, making it impossible for the plaintiffs to defend against those exceptions and motion. Most specifically, the plaintiffs claim that the trial court should not have granted a motion for summary judgment until after the completion of discovery under the provisions of La. C.C.P. art. 967.
Pan American claims that the plaintiffs' blanket request for information concerning files other than their own claim files was unreasonably burdensome. Moreover, Pan American claims that it produced the named plaintiffs' entire claims files prior to the filing of the motion for a stay; the plaintiffs do not dispute this assertion. Until the certification of a class action, Pan American claims, the plaintiffs are not entitled to other files.
Generally, "[a] trial court has broad discretion in handling discovery matters." Laburre v. East Jefferson General Hospital, 555 So.2d 1381, 1385 (La.1990); Connick v. Brechtel, 98-0543 (La.App. 4 Cir. 4/22/98), 713 So.2d 583, 587, writ denied, 98-1404 (La.6/3/98), 720 So.2d 1202. Under the circumstances, we find no abuse of discretion in the trial court's stay of the discovery. The named plaintiffs were provided their own claims files; therefore, they were allowed to discovery information to defend their individual actions, which are the only actions at issue in this appeal. *1040 Moreover, considering the fact that we affirm the trial court's granting of the exception of prescription on the tort claims, and the exception of no cause of action on the breach of contract claims, we will not even consider whether the trial court properly granted the motion for summary judgment. Accordingly, the plaintiffs' arguments based on La. C.C.P. art. 967 are moot.

III. Exception of Prescription
Pan American's primary argument on this issue is that any valid tort claims made by the named plaintiffsi.e., the misrepresentation and fraud claimshave prescribed because the plaintiffs failed to file suit within one year of the date they either knew or should have known of the existence of their claims. They claim that a close reading of the allegations of the plaintiffs' petition reveals that the plaintiffs' claims have prescribed on their face.

A. Record facts surrounding prescription issue
In order to determine the prescription issue, this court has closely examined the petition filed by the plaintiffs, as well as the affidavit filed by Pan American in support of its exceptions and motion for summary judgment. The factual circumstances surrounding the claims are summarized below:

1. Dr. Bergeron's claim
Concerning Dr. Bergeron, the plaintiffs' petition alleges that he was induced by agent Davidson to "replace" his existing life insurance policies with a new, larger Pan American policy on November 10, 1984. Dr. Bergeron claims that Mr. Davidson told him "that the Pan Am policies would pay a higher rate of interest than his current policies and that, by the time Dr. Bergeron reached retirement age, the premium on the Pan Am policy would `vanish'." Petition, paragraph 9. His purchase of the Pan American policies, he alleged, was induced by Mr. Davidson's representation that Pan American "had a solid investment structure which would protect its rates from fluctuating as much as the market and that the Pan Am policy would be a better investment vehicle than a savings or retirement account." Id. at paragraph 10. Dr. Bergeron alleged that he "paid $6,000.00 per year as a premium on the Pan Am policy for ten years, and, based upon the representations made by Mr. Davidson, did not expect to be billed further," and that "[h]e was told that the payment of the December 1993 premium would be his last payment." Id. at paragraph 14. Nevertheless, he alleged, he received a premium notice for $6,000 in December 1994, which he paid in January 1995. Id. at paragraph 16. The suit was not filed until April 7, 1997.
In support of its exceptions and motion for summary judgment, Pan American attached the affidavit of Edward J. Ray III, Senior Vice President of U.S. Individual and Technical Services of Pan-American Life Insurance Company and Vice President of Technical Services of Pan-American Insurance Co. and Pan American Assurance Co. Relative to Dr. Bergeron's claim, Mr. Ray acknowledged that Pan American issued a $500,000 universal life policy in 1984. Ray affidavit, paragraph 19. The affidavit then rehearses Dr. Bergeron's payment history during the first year of the policy's existence, then asserts as follows: "For the next ten years, in December of each year, Bergeron made payments of $6,000.00 annually which were credited to the Bergeron policy." Id. at paragraph 21. Then, Ray attested, in December 1994, "Pan-American sent Dr. Bergeron a premium notice of Six Thousand Dollar ($6,000), which Dr. Bergeron paid in January 1995." Id. Then on December 12, 1995, Dr. Bergeron's policy was put on inactive status at his request. Id. After that date, no premium notices were sent to Dr. Bergeron by Pan American and Dr. Bergeron made no payments.

*1041 2. Mr. Mitchell's claim
Concerning Mr. Mitchell's claim, the petition alleges that defendant DeCharles induced him to "replace" his existing life insurance policies sometime in early 1990, by making the following representations: "that it would be a paid up whole life policy with no further premiums, the cash value of the policy would continue to increase, the dividends paid on the policy would buy additional insurance and the death benefit of the policy would increase over the life of the policy." Petition, paragraph 19. Mr. Mitchell alleged that, despite Ms. DeCharles' representations, he was billed annually for the policy for five years in the amount of $3,022.60, an amount three times greater than the premium on the insurance policies he "surrendered." Id. at paragraph 21. Mr. Mitchell alleged that he notified Pan American and Ms. DeCharles that he should not have been charged additional premiums "from the very beginning." Id. at paragraph 22. Mr. Mitchell claims that Ms. DeCharles promised to take care of the problem, and that she "had" him "endorse a form that authorized Pan Am to use the cash value of the paid up insurance rider to pay the annual premium." Id. Moreover, he claims that he "had to borrow against the cash value of the policy at one point in order to pay the annual premiums." Id. Suit was filed on April 9, 1997.
Ray's affidavit concerning Mr. Mitchell's claim sets forth a complicated business relationship and payment history. Mr. Ray asserted that the Mitchells[1] were billed $3,022.60 annually for the Pan American policy, which was paid in 1991 and 1992. Ray affidavit, paragraphs 10-11. The second premium notice was due on June 26, 1991. Id. In 1993, the policy was allowed to lapse due to non-payment of premiums, Mr. Ray said, until Ms. Mitchell requested that the premium be paid with the cash value of paid-up insurance that was surrendered for that purpose. Id. at paragraph 13. Then, in January of 1994, Ms. Mitchell "signed the Policy Contract Amendment to execute the automatic premium loan provision of the policy," Mr. Ray said. Id. at paragraph 15. Another "Request for Change of Dividends" was then signed by Ms. Mitchell on June 23, 1994, whereby "she requested that a portion of her Paid-Up additional insurance be surrendered for its cash value of $3,022.60 to pay the annual premium due June 26, 1994," according to Mr. Ray's affidavit. Id. at paragraph 16. The June 26, 1995 premium was also paid by surrender of a portion of paid-up insurance for its cash value, he said. Id. at paragraph 18.

B. Application of law to facts
In Louisiana, "delictual actions are subject to a liberative prescription of one year, commencing to run from the day injury or damage is sustained." La. C.C. art. 3492. Because statutes governing prescription are strictly construed against prescription in favor of the obligation sought to be extinguished, when two possible constructions exist, the construction which favors maintaining, as opposed to barring, an action should be adopted. Asbestos Plaintiffs v. Bordelon, Inc., 96-0525 (La.App. 4 Cir. 10/21/98), 726 So.2d 926.
Ordinarily, the party pleading the exception of prescription bears the burden of proof. Brown v. American National Property & Casualty Co., 98-2292, p. 1 (La.App. 4 Cir. 10/28/98) 720 So.2d 1278, 1279. However, where the face of the petition reveals that prescription has run, the burden of proof shifts to the plaintiff to show that prescription has not run. Id. Generally, a ruling on prescription turns on the credibility of the parties as to when the respondents knew or should have known about the existence of the claim. In re Medical Review Panel for Claim of Dede, 98-0830, p. 2 (La.App. 4 Cir. 5/20/98), 713 So.2d 794, 796.
*1042 In this case, the allegations of the plaintiffs' petition reveal that both Dr. Bergeron's claims and Mr. Mitchell's claims had expired prior to the filing of the suit on April 7, 1997. According to Dr. Bergeron's allegations, he first suffered harm because of Pan American's alleged tortious representation that he would be required to make only ten annual payments on the policy when he received the eleventh premium notice for $6,000 in December 1994, almost two and one-half years before the filing of the suit on April 7, 1997. According to Mr. Mitchell's allegations, he first suffered harm because of Pan American's alleged tortious representation that he would be required to pay only one annual premium on the policy when he received the second premium notice in June 1991, almost six years prior to the filing of suit on April 7, 1997. Accordingly, the plaintiffs have the burden of showing that prescription has not run. To that end, they claim that contra non valentum should be applied to suspend prescription in this case.

C. Contra non valentum

Because of the sometimes harsh consequences which result from the strict interpretation of prescription statutes, contra non valentum has been adopted by Louisiana courts as a jurisprudential exception to prescription. Bordelon, 726 So.2d 926. Under the doctrine of contra non valentum, prescription does not begin to run until a plaintiff either knew or should have known of a cause of action, even if that knowledge does not occur until long after the wrongful conduct at issue has occurred. Simmons v. Templeton, 97-2349, 98-0043, p. 4 (La.App. 4 Cir. 11/10/98), 723 So.2d 1009, 1012, writs denied, 98-3050, 98-3060 (La.2/5/99), ___ So.2d ___, ___, 1999 WL 58217, 58260. Contra non valentum therefore suspends the running of prescription during the period in which the cause of action was not known by or reasonably knowable by the plaintiff. Louisiana Plaque Corp. v. Chevron U.S.A. Inc., 93-1597 (La.App. 4 Cir. 5/26/94), 638 So.2d 354, 356, writ denied, 98-2125 (La.11/11/94), 644 So.2d 395.
In Jordan v. Employee Transfer Corp., 509 So.2d 420 (La.1987), the Louisiana Supreme Court clarified the application of contra non valentum, holding that prescription begins to run, not at the earliest possible indication that the plaintiff may have suffered some wrong, but not until the plaintiff has a reasonable basis to pursue a claim against a specific defendant. Id. at 423. Louisiana jurisprudence recognizes that contra non valentum is an exceptional remedy which is in direct contradiction to the articles in the Civil Code and therefore should be strictly construed. Harsh v. Calogero, 615 So.2d 420, 422 (La. App. 4 Cir.1993).
Under Louisiana law, contra non valentum applies in the following four types of situations:
(1) when courts are legally closed; (2) when administrative or contractual restraints delay the plaintiff's action; (3) when the defendant prevents the plaintiff from bringing suit; and (4) when the plaintiff does not know nor reasonably should know of the cause of action.
In re Medical Review Panel Proceeding Vaidyanathan, 98-0289, p. 5 (La.App. 4 Cir. 9/23/98), 719 So.2d 604, 607, writ denied, 98-2674 (La.12/18/98), 732 So.2d 1238.
Citing the fourth circumstance above, the plaintiffs claim that contra non valentum should be applied to suspend prescription in this case because their claims were not reasonably knowable by them until November of 1996 and March of 1997, when they consulted attorneys. However, prescription runs from the time that the plaintiff has actual or constructive knowledge of the tortious act, which has been defined as "the time at which the plaintiff has information sufficient to excite attention and prompt further inquiry." National Council on Compensation Insurance v. Quixx Temporary Services, Inc., *1043 95-0725, p. 7 (La.App. 4 Cir. 11/16/95), 665 So.2d 120, 124. The heart of the inquiry into constructive knowledge is the reasonableness of plaintiff's inaction.
Under the facts of the instant case, the inaction of the plaintiffs was not reasonable. Both plaintiffs had information sufficient to excite attention and prompt further inquiry when they received the premium notices demanding money beyond the amount they were allegedly told they would be required to pay. In fact, Dr. Bergeron allowed his policy to lapse at that time, and Mr. Mitchell's wife authorized payment of additional premiums through a complex set of transactions over a period of several years after the time they should have known the terms of the policy had been misrepresented. Advice of an attorney was not necessary to place either of the plaintiffs on notice of their cause of action. Thus, contra non valentum did not suspend prescription in this case. Accordingly, we find no error in the trial court judgment dismissing the plaintiffs' tort claims against Pan American on the exception of prescription.

IV. Breach of contract claims
Because the prescriptive period for contract claims is ten years, the breach of contract claims alleged by the plaintiffs in this case are not prescribed. La. C.C. art. 3499. Nevertheless, the trial court properly dismissed the breach of contract claims on the exception of no cause of action for the reasons described more fully below.
Louisiana law concerning the interpretation of insurance contracts was recently explained by the Louisiana Supreme Court as follows:
An insurance policy is a conventional obligation that constitutes the law between the insured and insurer, and the agreement governs the nature of their relationship. La. Civ.Code art. 1983. As such, courts are guided by certain principles of construction and should interpret insurance policies the same way they do other contracts by using the general rules of contract interpretation as set forth in our Civil Code.... When the words of an insurance contract are clear and explicit and lead to no absurd consequence, courts must enforce the contract as written and make no further interpretation in search of the parties' intent. La. Civ.Code art. 2046.
Words in an insurance contract are to be given their generally prevailing and ordinary meaning, unless they have acquired a technical meaning. La. Civ. Code art. 2047. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. An insurance contract is construed as a whole and each provision of the policy must be interpreted in light of the other provisions so that each is given meaning. One portion of the policy should not be construed separately at the expense of disregarding other provisions. La. Civ.Code. Art. 2050. An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. That is, the rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent. If, after applying the other general rules of construction, an ambiguity remains, the ambiguous contractual provisions is to be construed against the insurer who furnished the policy's text and in favor of the insured finding coverage. When a contract can be construed from the four corners of the instrument without looking *1044 to extrinsic evidence, the question of contractual interpretation is answered as a matter of law....
Peterson v. Schimek, 98-1712, pp. 4-5 (La.3/2/99), 729 So.2d 1024, 1028-29 (citations to cases omitted).
Dr. Bergeron claims that he was assured by Mr. Davidson that he would be required to pay only ten annual premium payments on the policy he purchased from Pan American in 1984. However, relative to the payment of premiums, the Pan American life insurance policy issued to Dr. Bergeron provides as follows:
Payment of Premiums  The initial Premium is due on the policy Date and is payable in advance. The amounts and frequency of Planned Premium Payments are shown on the Policy Schedule. Policy anniversaries occur annually and are computed from the Policy Date.
Pan American policy # XXXXXXXXXX, page 7. The "POLICY SCHEDULE" on page 3 of the policy then lists the "PLANNED PREMIUM PAYMENTS" as "$810.00 MONTHLY." The maturity date of the policy is June 20, 2028, according to the "POLICY SCHEDULE."
Moreover, the Pan American life insurance policy issued to Dr. Bergeron contained the following "integration clause":
Policy Contract  This policy, the attached application and any riders or endorsements make up the entire contract. It is based on the application and the payment of the initial premium. All statements made by the insured in the application are representations not warranties. Statements may be used to contest a claim or the validity of the policy only if they are contained in an application or supplemental application, or application for reinstatement and a copy of such application is attached to the policy when issued or made a part of the policy when a change in insurance coverage or reinstatement became effective.
Only the President, Vice-President, Secretary or Assistant Secretary can modify this policy. Any changes must be made in writing. No agent has the authority to alter or modify any of the terms, conditions or agreements of this policy, or to waive any of its provisions.
Id. at 15 (emphasis added).
Mr. Mitchell claims that he was told that only one premium payment would be required on the Pan American policy purchased in June of 1990. However, relative to the payment of premiums, the cover page of the Pan American Whole Life Policy states as follows: "Premiums Payable for Stated Period." Policy # XXXXXXXXXX. Moreover, the "Stated Period" for the $2,091.80 premium on the whole life policy is defined on page 3 as 49 years. Moreover, page 3 lists an "additional premium" of $930 payable for 20 years, as well as a paid-up insurance rider of $23,151.39 for one year.
The Pan American policy issued to the Mitchells also contains the following "integration clause":
Policy Contract  This policy, the attached application and any riders or endorsements make up the entire contract. It is based on the application and the payment of the premium amount. All statements made by the Insured in the application are representations and not warranties. Statement may be used to contest a claim or the validity of the policy only if they are contained in the attached application when issued.
Only the President, Vice President, Secretary or Assistant Secretary can modify this policy. Any changes must be made in writing. No agent has the authority to alter or modify any of the terms, conditions or agreements of this policy, or to waive any of its provisions. *1045 Id. at 12 (emphasis added). Moreover, the cover page of the Mitchell policy contains the following provision:

RIGHT TO EXAMINE POLICY
Within 20 days after this policy is first received, it may be canceled for any reason by delivering or mailing it to our Home Office in New Orleans, Louisiana, or to the agent through whom it was purchased.

Upon cancellation we will return any premium paid.

This is a legal contract between you and us.

PLEASE READ YOUR POLICY AND APPLICATION CAREFULLY
Id.
The plaintiffs fail to point out any provision of the written insurance policies which have been allegedly breached by Pan American. Moreover, in their brief to this court, the plaintiffs admit that "Louisiana law does not allow parol evidence to vary the terms of an unambiguous written contract." Id. at 17. In support of their contention that the trial court improperly granted the exception of no cause of action on their breach of contract claims, the plaintiffs assert the exception to the parole evidence rule which allows the introduction of parole evidence to prove fraud, misrepresentation, and error. See La. C.C. art. 1848. However, we have already concluded that the plaintiffs' fraud and misrepresentation claim have prescribed. The parole evidence rule may not be used to vary the unambiguous terms of the written insurance policy; the unambiguous terms of the written insurance policies at question hereas outlined abovereveal that the plaintiffs have failed to even allege any breaches of the written policy. Accordingly, we find no error in the trial court judgment dismissing the plaintiffs' breach of contract claims on the exception of no cause of action.

V. Conclusion
Accordingly, the trial court judgment dismissing the plaintiffs' claims against Pan American is affirmed.
AFFIRMED.
NOTES
[1] Pan American policy # XXXXXXXXXX was issued to Jo Ann Mitchell, not to Mr. Mitchell.