# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 01-2457

_____

| | | |
|---|---|---|
| In re: Minnesota Mutual Life Insurance Company Sales Practices Litigation | * * * | |
| ---------------------------------------- | * * | |
| Jack McCord; Daniel Martin; Frances Martin, individually and as representatives of all persons similarly situated, | * * * * * | Appeal from the United States District Court for the District of Minnesota. |
| Appellants, | * * | |
| v. | * * | [PUBLISHED] |
| Minnesota Mutual Life Insurance Company, | * * * * | |
| Appellee. | * | |

_____

Submitted: December 13, 2002
Filed: October 20, 2003

_____

Before HANSEN, Chief Judge,[1] LAY and BYE, Circuit Judges.

_____

[1]The author of the opinion stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2003. He has been succeeded by the Honorable James B. Loken.

HANSEN, Circuit Judge.

Jack McCord, Daniel Martin, and Frances Martin appeal the district court's[2] entry of summary judgment in favor of Defendant Minnesota Mutual Life Insurance Company on claims arising out of Minnesota Mutual's alleged fraudulent and deceptive practices in the marketing and sales of "vanishing premium" life insurance policies.  We affirm.

I.

McCord purchased a life insurance policy from Minnesota Mutual in 1987.  He alleges that the insurance agent represented, through a sales illustration, that the policy's premiums would "vanish" after the seventh year of the policy (1994) because the policy dividends would be large enough to pay the premiums as they came due without McCord making additional out-of-pocket payments for the remainder of his life.  In 1988, McCord began receiving annual policy review statements (APRs) indicating that the actual declared dividends were less than those projected in the 1987 illustration.  McCord testified that he knew in 1990 that out-of-pocket premium payments would be required for at least two years beyond the seven-year period he allegedly was promised in 1987. (Appellee's App. at SA0184-185.) In 1993, McCord arranged to have the policy reissued after reviewing another sales illustration indicating that policy dividends would exceed policy premiums after the third year of the reissued policy (1996).  After making nine annual premium payments from 1987 to 1995, McCord contacted Minnesota Mutual in 1996 to inquire about his policy's performance.  When he learned that his premiums would not "vanish" as expected, he cancelled the policy.

---

[2]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

The Martins assert that the same insurance agent persuaded them to purchase a Minnesota Mutual life insurance policy in 1987 after representing, through sales illustrations, that the policy would require only ten annual premium payments, after which no further out-of-pocket payments would be required. The Martins' policy was reissued three times. The Martins admit to never having fully read the policy, sales illustrations, or APRs provided by Minnesota Mutual. Nevertheless, Daniel Martin admitted that if he had read the APRs that he received after 1989 he would have recognized that the policy was not performing as he anticipated. (Id. at SA0250-252.)

McCord filed this purported class action in Louisiana state court in July 1997, asserting that Minnesota Mutual's alleged fraudulent and deceptive practices in the marketing and sales of "vanishing premium" life insurance policies gave rise to five causes of action under Louisiana law: (1) unfair or deceptive acts; (2) breach of duty of good faith and fair dealing; (3) negligent misrepresentation and omissions; (4) breach of contract; and (5) breach of fiduciary duty. Defendants removed the action, and the United States District Court for the District of Louisiana remanded. McCord filed an amended petition, adding Daniel Martin and Frances Martin as plaintiffs. McCord had also named the Louisiana insurance agent, Earl Venable, as a defendant in his original petition, and after remand, Venable filed a motion for summary judgment and dismissal of the claim against him. The state court entered a consent judgment dismissing Venable without prejudice and indicated that plaintiffs had thirty days to reinstate their claims against Venable, which they failed to do. Venable's dismissal from the action created complete diversity between the plaintiffs, who are Louisiana residents, and defendant, a Minnesota corporation.

Minnesota Mutual again removed the case to the United States District Court for the Western District of Louisiana, and plaintiffs' motion to remand was denied. The clerk of the Multidistrict Litigation Panel then issued an order transferring the case to the District of Minnesota, where the district court again denied plaintiffs' motion to remand to Louisiana state court. The Minnesota district court subsequently

granted Minnesota Mutual's motion for summary judgment, concluding that (1) Louisiana substantive law governed; (2) all plaintiffs' claims were time-barred under the relevant Louisiana prescriptive periods; and, alternatively, (3) plaintiffs' claims failed on the merits. McCord and the Martins appeal, arguing that (1) this court lacks subject matter jurisdiction; (2) Minnesota substantive law should govern; (3) the claims are not time-barred; and (4) the district court erred in applying the parol evidence rule to exclude the sales illustrations from consideration.

## II.

We review the grant of summary judgment de novo, giving the nonmoving party the benefit of all reasonable inferences supported by the record. Eddings v. City of Hot Springs, 323 F.3d 596, 600 (8th Cir. 2003). We must determine whether the record, when viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

### A. Subject Matter Jurisdiction

Appellants argue that this court lacks subject matter jurisdiction because the parties are not diverse and because the amount in controversy does not exceed the jurisdictional minimum. Although the parties argued subject matter jurisdiction in their briefs, the district court's summary judgment order does not address this argument, and Appellants did not pursue it at oral argument. Nevertheless, because the parties may not expand the limited jurisdiction of the federal courts by waiver or consent, we consider a challenge to subject matter jurisdiction even when first raised on appeal. See Jader v. Principal Mut. Life Ins. Co., 925 F.2d 1075, 1077 (8th Cir. 1991). We review such issues de novo. See Gilbert v. Monsanto Co., 216 F.3d 695, 699 (8th Cir. 2000). Where, as here, the complaint alleges no specific amount of

damages or an amount under the jurisdictional minimum, the removing party, Minnesota Mutual, must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. See Trimble v. Asarco, Inc., 232 F.3d 946, 959 (8th Cir. 2000) ("[T]he party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence."). "The complaint will be dismissed if it appears to a legal certainty that the value of the claim is actually less than the required amount." Id. (internal marks omitted).

The Appellants argue that complete diversity does not exist because defendant Venable, a Louisiana resident, was improperly dismissed in state court. In a separate order denying Appellants' motion to remand, (Appellee's App. at SA0015-22), the Minnesota district court fully addressed this argument and concluded that the state court's dismissal order controls under the law of the case doctrine. We agree with the district court's well-reasoned analysis in that order, and we conclude that there is complete diversity between the remaining parties – Appellants, who are Louisiana residents, and Minnesota Mutual, a Minnesota corporation.

The Appellants also assert that the amount in controversy as to each Appellant is below the jurisdictional minimum of $75,000. Minnesota Mutual argues that the appropriate measure of the amount in controversy in this case is the face value of the relevant life insurance policies – $250,000 for McCord's policy and $1,000,000 for the Martins' policy. See In re Prudential Ins. Co. of Am. Sales Practices Litig., 962 F. Supp. 450, 503 (D.N.J. 1997), aff'd, 148 F.3d 283 (3d Cir. 1998) ("Where plaintiffs seek equitable relief pertaining to the enforcement of insurance policies, the face value of the policy is the measure of the amount in controversy."); see also Guardian Life Ins. Co. of Am. v. Muniz, 101 F.3d 93, 94 (11th Cir. 1996) (noting that the face value of life insurance policies constitutes the amount in controversy); Mass. Cas. Ins. Co. v. Harmon, 88 F.3d 415, 416 (6th Cir. 1996) (finding that the value of future benefits under a disability policy is considered in determining the jurisdictional amount where the validity of the policy is at issue). Additionally, Minnesota Mutual

asserts that a post-complaint settlement letter that it received from Appellants requesting over $75,000 in damages for each plaintiff is sufficient to establish the jurisdictional minimum. See Addo v. Globe Life & Accident Ins. Co., 230 F.3d 759, 761-62 (5th Cir. 2000) (holding that a post-complaint demand letter constitutes "other paper" under 28 U.S.C. § 1446(b) for purpose of ascertaining the amount in controversy).

Although Appellants were unable or unwilling to pay their premiums after 1996, the complaint specifically states that they paid all premiums through the "vanishing date" allegedly represented to them by Venable in expectation of whole life coverage. Accordingly, if they would receive the equitable relief that they have requested, they would be due the face value of their policies upon their death, "an event bound to happen." Guardian Life, 101 F.3d at 94 (citation omitted). Therefore, in lieu of a potentially smaller award based solely on compensatory damages, the face value is the amount that Minnesota Mutual would eventually have to pay Appellants if they were to prevail on their equitable claims. We find that the amount in controversy exceeds the statutory minimum and that diversity jurisdiction exists. Although Appellants' letter offers further support for the valuation of the claims, we do not decide here whether a post-complaint settlement offer alone is sufficient to establish the requisite amount in controversy.

## B. Choice of Law

We reject Appellants' argument that Minnesota law, rather than Louisiana law, governs this case. The district court correctly applied Louisiana's choice of law rules[3] to conclude that Louisiana substantive law governs these claims filed by Louisiana residents concerning an insurance policy sold in Louisiana by defendant's agent

---

[3]La. Civ. Code arts. 3537& 3542.

conducting business in Louisiana. Indeed, Appellants' complaint relied upon specific Louisiana code provisions and was filed in Louisiana state court.

## C. Statute of Limitations

The issue of whether a suit is time-barred is a question of law, which properly may be resolved at the summary judgment stage if there are no genuine issues of material fact in dispute. Hallgren v. U.S. Dep't of Energy, 331 F.3d 588, 589 (8th Cir. 2003). Appellants' tort claims – unfair and deceptive acts, negligent misrepresentation, and breach of fiduciary duty – are subject to a one-year prescriptive period. See La. Civ. Code art. 3492. In Louisiana, the prescriptive period for tort claims begins to run at "the time at which the plaintiff has information sufficient to excite attention and prompt further inquiry." Bergeron v. Pan Am. Assur. Co., 731 So. 2d 1037, 1042 (La. Ct. App. 1999) (citation and internal marks omitted). Appellants argue that the prescriptive period never began to run in their case because they never actually made additional premium payments beyond those anticipated at the beginning of the policies. See Parkhill v. Minn. Mut. Life Ins. Co., 286 F.3d 1051, 1055 (8th Cir. 2002) ("[T]he latest time that any of the claims could have accrued was the point at which Minnesota Mutual required Parkhill to make out-of-pocket payments that were inconsistent with Russo's alleged representations regarding the policy.").

We adopt the district court's well-reasoned opinion concluding that Appellants were on notice of the alleged breach as early as 1988 when the APRs reported that the actual declared dividends were inconsistent with those that allegedly had been promised to them. Cf. id. at 1056 ("Given the substantial difference between the amount of the premiums paid and the dividends generated, the Parkhills should have questioned the legitimacy of [the agent's] representations and the self-sustaining nature of the policy as early as [year two]."). Assuming that the Appellants were promised that their out-of-pocket premium payments would "vanish," the receipt of

sufficient interest and dividends in the first seven to ten years would have been an integral component of that promise.[4] Because we agree that the one-year prescriptive period began to run in 1988, nearly nine years before Appellants filed suit in 1997, we affirm the district court's judgment that Appellants' tort claims are time-barred.

Appellants' claims for breach of contract and breach of the duty of good faith and fair dealing are subject to a ten-year prescriptive period. See La. Civ. Code art. 3499. The district court concluded that Appellants should have been on notice of the alleged breach of contract when they received policies in 1987 that were allegedly inconsistent with Venable's representations. However, as we understand them, Appellants' contract claims are not based on Minnesota Mutual's failure to deliver policies containing an explicit vanishing premium provision. Instead, Appellants allege that the oral promises and written projections presented by the agent could be interpreted consistently with the written policies and that those representations were either incorporated into or defined ambiguous terms in the insurance policy which Minnesota Mutual eventually breached by failing to vanish Appellants' premiums.

Although the alleged ultimate promise was to "vanish" Appellants' premiums, Appellants understood that this representation was based on a more fundamental promise to pay out sufficient interest and dividends so as to exceed the premiums due. In other words, Appellants interpreted the representations to mean that the interest and dividend rates would remain at their 1987 level throughout the life of the policies. It was not until 1988 when Appellants began receiving the APRs that they were put

---

[4]The Martins also argue that they intended to purchase whole life policies, but did not realize until 1997 that they had purchased term policies. We agree with the district court that the Martins were on notice that they had purchased term policies in 1987 when their policy was sent out with a cover sheet indicating it was only term coverage and in the subsequent years when the policy was reissued. The fact that the Martins did not actually receive the original policy in 1987 does not excuse the nine- or ten-year delay in filing their claim.

on notice that this was not the case. Because Appellants filed their contract claims in 1997, we respectfully disagree with the district court that those claims are barred by the ten-year prescriptive period. Nevertheless, we agree with the district court that those claims fail on the merits.

## D. Contract Claims

Appellants' contract claims are based on Minnesota Mutual's failure to "vanish" their premiums. Although there is no specific policy provision that mentions "vanishing" premiums, Appellants assert that we may consider the representations made by Venable and those in the sales illustrations in interpreting the explicit policy provisions. Specifically, Appellants argue that the policy is ambiguous as to the source of the premiums due. They assert that we may consider parol evidence to clarify that ambiguity. Alternatively, Appellants argue that even if the policy is unambiguous, this court may look to the sales illustrations as evidence of surrounding circumstances in order to ascertain the intention of the parties. Finally, Appellants rely on the theory of promissory estoppel to argue that the sales illustrations became terms of the insurance contract.

Under Louisiana law, "[a]n insurance policy is a conventional obligation that constitutes the law between the insured and insurer," and courts "should interpret insurance policies the same way they do other contracts by using the general rules of contract interpretation as set forth in [Louisiana's] Civil Code." Peterson v. Schimek, 729 So. 2d 1024, 1028 (La. 1999) (citations omitted). Courts must "give legal effect to contracts according to the true intent of the parties." Kappa Loyal, L.L.C. v. Plaisance Dragline & Dredging Co., Inc., 848 So. 2d 765, 769 (La. Ct. App. 2003) (citing La. Civ. Code. art. 2045) (internal marks omitted). "Meaning and intent of parties to a written instrument is ordinarily determined from [the] instrument's four corners and extrinsic evidence is inadmissible either to explain or to contradict [the] instrument's terms." Abshire v. Vermilion Parish Sch. Bd., 848 So. 2d 552, 555 n.5

(La. 2003) (noting that under La. Civ. Code art. 2046, "when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation need be made into the parties' intent.") (internal marks omitted).

Both insurance policies contain an explicit merger and integration clause clearly defining the contract as only the application and the policy. Because the policies are complete and fully integrated, we may not consider extrinsic evidence unless the policy is ambiguous on its face. Although the Restatement (Second) of Contracts and a number of courts in other jurisdictions apply a more lenient standard for considering surrounding circumstances and parol evidence to interpret the terms of an otherwise unambiguous contract, Louisiana law requires that we apply the traditional "four corners" doctrine. Thus, we may not look to extrinsic evidence even to determine whether the policies are ambiguous.

The policies state that a premium is due annually. Nothing in the policies themselves suggests that the source of the premiums is to be anything other than the insured's own funds. The policies do not specifically state the source of the premium payments due in the first seven years when Appellants admit to being responsible for payment. We see no reason to find an ambiguity in the policies because they fail to specify the source of premium payments in the following years.

We find that the policies are unambiguous and that any enforcement of the alleged promises made by Venable through the use of sales illustrations would violate the parol evidence rule and must be disregarded. Without the benefit of parol evidence, Appellants can point to no terms of the written policy that have been breached. Cf. Bergeron, 731 So. 2d at 1045. Accordingly, we agree with the district court that Appellants' contract claims fail on the merits.

Furthermore, Appellants' claims based on the theory of promissory estoppel necessarily fail because Appellants cannot demonstrate justifiable reliance on the

alleged promises.  See Holt v. Bethany Land Co., 843 So. 2d 606, 613 (La. Ct. App. 2003) (noting that justifiable reliance is the second prong of an action based on estoppel).  The disclaimers at the bottom of the sales illustrations clearly state that the projections are based on the current rate of interest and dividends, which are subject to change, and that the illustration is not a contract.  Appellants concede that had they read their policies and these disclaimers, they would have known that the then current 1987 rates were not guaranteed.

Accordingly, we affirm the judgment of the district court.

_____