857 So.2d 1138 (2003)
Burnetta FAURIA
v.
Caverly A. DWYER and State Farm Mutual Automobile Insurance Company.
James Taylor, Alvin Armour and Ralph Gavin
v.
Keyana Marie Manchester and State Farm Mutual Automobile Insurance Company.
Nos. 2002-CA-2320, 2002-CA-2418.
Court of Appeal of Louisiana, Fourth Circuit.
September 24, 2003.
*1139 Robert G. Harvey, Sr., Mark P. Glago, Harvey, Jacobson & Glago, APLC, New Orleans, LA, for Plaintiffs/Appellees.
W. Patrick Klotz, Klotz & Early, New Orleans, LA, for Appellee (Louisiana Medical Management Coporation).
David V. Batt, Phillip J. Rew, Lobman, Carnahan, Batt, Angelle & Nader, New Orleans, LA, for Defendants/Appellants.
*1140 (Court composed of Chief Judge WILLIAM H. BYRNES, III, Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge DAVID S. GORBATY, Judge EDWIN A. LOMBARD).
PATRICIA RIVET MURRAY, Judge.
This is a discovery dispute that arose out of two unrelated personal injury suits against the same insurance company, State Farm Mutual Automobile Insurance Company ("State Farm"). In both suits, State Farm noticed the depositions of the same two related non-partiesMetropolitan Health Group ("MHG"); and its management company, Louisiana Medical Management Corporation ("LMMC")pursuant to La. C.C.P. art. 1422, and issued accompanying subpoenas duces tecum. In both suits, LMMC and plaintiffs moved to quash the discovery requests and sought sanctions.[1] The trial court granted the motions and imposed sanctions totaling $20,000 on State Farm and its attorney, David V. Batt. State Farm and Mr. Batt filed separate writ applications with this court in each case. This court reversed the sanctions award and remanded for the assessment of appropriate sanctions, if any. On remand, the trial court imposed sanctions totaling $16,000. These consolidated appeals followed.[2] For the reasons that follow, we reverse the trial court's award of sanctions.

FACTUAL AND PROCEDURAL BACKGROUND
The pertinent facts in these consolidated cases are undisputed. State Farm, in its capacity as insurer for the respective tortfeasors, was named as a defendant in these two unrelated personal injury cases, Taylor v. Manchester, and Fauria v. Dwyer. Both cases arose out of motor vehicle accidents, which occurred in Taylor on October 20, 2000, and in Fauria on February 14, 2000. Both cases involved relatively minor personal injuries. In both cases, the plaintiff(s), on referral from their attorney, treated within days following the accidents with a physician employed by MHG, either Dr. Norman Ott or Dr. Sofjan Lamid. The sole plaintiff in Fauria, Ms. Fauria, treated with Dr. Lamid. Two of the three plaintiffs in Taylor treated with MHG physicians; Mr. Taylor treated twice with Dr. Ott, and another plaintiff, Mr. Armour, treated four times with Dr. Lamid.[3]
*1141 In preparation for trial, State Farm noticed the Article 1422 depositions of MHG and LMMC in both cases, and issued accompanying subpoenas duces tecum. According to State Farm, the purpose for these discovery requests was to obtain information to cross-examine the MHG physicians at trial regarding their bias. State Farm's subpoenas, which were virtually identical, sought sixteen categories (plus some sub-parts) of documentation; to wit:
1. All records regarding the referral of plaintiff to MHG and the billing, collection, and treatment records regarding plaintiff;
2. The names and addresses of all owners, investors, financiers, stock holders, members, partners, shareholders, officers, executives, directors, or other persons with a financial or proprietary interest in MHG;
3. The means of financing clinic operations such as overhead, staffing, doctor's salaries, supplies and other expenses, utilized by MHG;
4. The nature of the fee agreements between MHG and its patients or their attorneys, including the contingency fee agreement between MHG and/or LMMC and the plaintiff in this matter or his (or her) attorney;
5. The percentage of patients treated by MHG which are referred to the clinic by attorneys; the percentage of patients treated by MHG which are referred by the plaintiffs bar, the percentages of patients treated by MHG which are referred by plaintiff(s) counsel in this matter, and/or the percentage of patients treated by MHG who are engaged in litigation or have made some type of personal injury claim with an insurance company in connection with their treatment;
6. With regard to referrals of patients to MHG, identification of persons or organizations who make or have made such referrals; identification and production of reports that are made reflecting such referrals or the economic value of such referrals to MHG; and the identification of all persons who have referred plaintiff in this matter to MHG;
7. Identification and production of any type of agreement or documentation regarding any letter of guarantee, contingency fee agreement, or other fee agreement between MHG and/or LMMC and plaintiff's counsel in this matter;
8. Identification and production of any written manuals dealing with medical protocols to be employed by MHG or its physicians;
9. Identification and production of protocols employed by MHG for the generation, transcription, and preparation of medical reports or bills;
10. Number of patients seen per day at MHG, the types of treatment given, the average time of treatment, and/or the average time of evaluation by a physician for patients treated at MHG;
11. Production of all documentation relating to the following: (a) the conception, creation and operation of MHG including but not limited to articles of incorporation, partnership agreement, operating agreement, stock certificates or other documentation reflecting the nature of MHG and/or the ownership or proprietary interest thereof; (b) *1142 the ownership or transfer of any proprietary interest in MHG; (c) the number of patients seen per day, types of treatment given, average time of treatment and/or evaluation by any MHG physician; (d) lien forms, letters of guarantee, or contingency fee agreements used by MHG; (e) lien forms, letters of guarantee, or contingency fee agreements between counsel for plaintiff in this matter and MHG or any of its employees, doctors, or chiropractors, and (f) all standard forms used in the preparation of patient medical reports and/or bills;
12. Identification and production of all procedures and protocols regarding: (a) the process by which the doctors' and therapists' notes, sign-in sheets, and other medical records of MHG patients are used by MHG to generate the patients' medical bills and transcribe narrative medical reports; (b) the method by which MHG selects the appropriate CPT codes in order to describe the therapy or other services provided by MHG; (c) the name and address of all MHG employees responsible for the generation of patients' medical bills, transcription of narrative medical reports, and selection of the appropriate CPT codes; (d) whether additional language was added to narrative medical reports transcribed by employees of MHG and, if so, the name and address of the persons responsible for the additional language, and the protocols used for the addition of language; and (e) whether additional billing entries were added to medical bills generated by MHG and, if so, the names and address of persons responsible for the additional entries, and the protocols used for the additional entries;
13. Identification and production of all procedures utilized to assure the accuracy of the transcription of medical reports and medical bills generated by MHG;
14. With regard to the physical therapy provided to MHG clients: (a) number and identity of all licensed physical therapists (PTs) or entity employing PTs, employed by MHG, having offices within the offices of MHG, renting space from MHG, or receiving referrals from MHG; (b) the supervision of all PTs and physical therapy support personnel, including, but not limited to, aides, technicians, assistants, students and permitees, including the identity and licensure of all supervising individuals; (c) produce all rental and/or revenue agreements between MHG and/or LMMC and any and all PTs, or entity employing PTs, providing physical therapy to clients of MHG; (d) the qualifications and licensure required by MHG or LMMC of any PTs or support personnel, or entity employing PTs and support personnel, which provide physical therapy to clients of MHG; and (e) the training provided by MHG and/or LMMC, or on the premises of MHG, to physical therapy aides, assistants, permitees, technicians, and students;
15. With regards to physical therapy provided to each respective plaintiff, produce all prescriptions, referrals, initial physical therapy evaluations, progress notes, reassessments, treatment records, and discharge summaries generated in *1143 conformity with Title 46:323 of the Louisiana Administrative Code;
16. Produce all documentation relating to the following: (a) the conception, creation, and operation of LMMC including articles of incorporation, partnership agreement, operating agreement, stock certificates or other documentation reflecting the nature of LMMC and/or the ownership or proprietary interest thereof; (b) the ownership or transfer of any proprietary interest in LMMC; (c) the number of patients seen per day, types of treatment given, average time of treatment, and/or evaluation by any LMMC physician; (d) all lien forms, letters of guarantee, or contingency fee agreements used by LMMC; (e) all lien forms, letter of guarantee, or contingency fee agreements between plaintiff's counsel and LMMC or any of its employees, doctors, or chiropractors; and (f) all standard forms used in the preparation of patient medical reports and/or bills.
As noted, plaintiffs and LMMC responded by filing motions to quash the discovery requests and seeking sanctions. In its motions, LMMC conceded that the first item sought was discoverable and represented that State Farm had been provided with that information; to wit, all medical records regarding each of the respective plaintiffs. As to the other fifteen items, however, LMMC asserted that it was entitled to a protective order pursuant to La. C.C.P. art. 1426 because the information sought was either privileged commercial information under La. C.C.P. art. 1426 A(7), or irrelevant, and because the overall request was overly burdensome, oppressive, and harassing.
Given that both suits were pending before the same trial court and given that both sets of motions were scheduled for hearing on the same date, the trial court considered the motions together. Following a lengthy hearing, the trial court granted the motions and awarded a total of $20,000 in sanctions ($5,000 per attorney, per case in attorney's fees) on State Farm and its attorney, David V. Batt. From that ruling, State Farm and Mr. Batt filed separate writ applications in each case.
On August 2, 2002, we exercised our emergency supervisory jurisdiction in the Taylor case due to the impending August 5, 2002 trial date. Insofar as the writ application requested reversal of the trial court's order quashing the discovery request, we denied the writ. However, we granted the writ insofar as it requested reversal of the trial court's $20,000 sanction award. Reversing that award, we found it was an abuse of discretion, reasoning:
It is apparent that the trial court assessed the $20,000.00 sanction, inter alia, as a form of punishment for the relator's actions in the case at bar as well as other cases in other trial courts where the relator or counsel sought the same or substantially similar information for LMMC and MHG. Article 1420 envisions the award of sanctions for things within the trial judge's actual knowledge and based upon evidence received in his or her own courtroom. A trial judge may not award sanctions for similar behavior by an attorney or party in other cases without bona fide evidence as to all of the facts and circumstances that were at issue therein. In the case at bar, although argument was made that the relator had done the same thing in other cases, no formal evidence was presented as to what the precise issues were in those cases. It is possible that the information sought in those other cases, based upon the pleadings and other factors, may have been relevant and necessary.
*1144 We remanded in Taylor to the trial court with instructions that it "assess an appropriate sanction to be imposed, if any, based upon the evidence in the record as it presently exists." Moreover, we limited the scope of the potential sanction award to "the actual time incurred by attorneys for and actual necessary expenses of LMMC's and MHG's during the period of 12 June 2002 (the date the notice of deposition and subpoena were issued) through 12 July 2002 (the date the motion to quash was heard and disposed of by the trial court) that resulted in the successful quashing of the depositions and subpoenas."[4]
On August 22, 2002, we denied in part and granted in part the writ application in the Fauria case. In so doing, we adopted our reasoning in the Taylor case. As in Taylor, we remanded for an assessment of the appropriate sanction. Following the instructions we enunciated in Taylor, and adopted in Fauria, the trial court on remand conducted a hearing and awarded $16,000 in sanctions ($4,000 per attorney, per case in attorney's fees).

DISCUSSION
The manifest error or clearly wrong standard applies to our review of the trial court's sanctions award. See Murphy v. Boeing Petroleum Services, Inc., 600 So.2d 823, 827 (La.App. 3 Cir. 1992); see also Hester v. Hester, 97-1326, p. 8 (La.App. 4 Cir. 2/11/98), 708 So.2d 462, 466. The narrow issue presented is whether sanctions, if any, were appropriately granted pursuant to Article 1420.
Adopted in 1988, Article 1420 is intended to provide an additional remedy for a party subjected to frivolous discovery. Article 1420 sanctions may be awarded if the court determines that "the discovery is interposed for an improper purpose, such as harassment, or is `unduly burdensome.'" 1 Frank L. Maraist and Harry T. Lemmon, Louisiana Civil Law Treatise: Civil Procedure § 9.13 (1999). Stated otherwise, such sanction "may be imposed upon an attorney or a party if the court determines that the discovery was improper or that the proponent's motive or judgment in seeking the discovery was bad." Id.
Before Article 1420 was adopted, the only remedy available for frivolous discovery was a protective order pursuant to La. C.C.P. art. 1426. Article 1426 provides that "for good cause shown" a trial court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," and expressly enumerates as one of the orders a trial court may make "[t]hat the discovery not be had ... [or] ... [t]hat certain matters not be inquired into, or that the scope of discovery be limited to certain matters." La. C.C.P. art. 1426(1), (4); see also La. C.C.P. art. 1354 (providing that a trial court may in its discretion "vacate or modify the subpoena if it is unreasonable or oppressive"). Article 1426 has been construed as granting the trial court broad discretion to regulate specific discovery requests. Maraist & Lemmon, supra. at § 9.1. Notably, this is the precise relief LMMC sought in its motions to quash that it filed in this case; to wit, it sought a protective order as to items two through sixteen.
*1145 Article 1420 B(2) and (3), which are similar to Article 1426, provide that a party is subject to sanctions if the discovery is interposed for an improper purpose, such as to harass or to cause needless increase in the cost of litigation; or [is] "unreasonable, unduly burdensome, or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation." La. C.C.P. art. 1420B.[5] In finding State Farm and Mr. Batt violated Article 1420 B(2) and (3), this court in Taylor reasoned:
In the absence of any allegation in a pleading in which the liability of LMMC or MHG for damages might be assessed, made directly, or upon information and belief, we find that the late filings of the discovery requests [we noted that on June 12, 2002, with a discovery cutoff date of June 13, 2002, State Farm served the Article 1422 notice of deposition and accompanying subpoena duces tecum], although technically timely, in a suit in which the amounts of money sought by the plaintiffs from the relator and their insured are not substantial, are violations of the plain language of La. C.C.P. art. 1420B (2) and (3).
Insofar as our reasoning was premised on the belated nature of State Farm's discovery requests, it was misplaced for two reasons. First, as State Farm submits, that reasoning was totally inapposite to the Fauria case in which no discovery cutoff date had been set. Second, our reference in Taylor to June 12th (the day before the discovery cutoff date) as the date on which the subpoenas were served (and the sanction period commenced) was factually mistaken. The subpoenas actually were issued on May 28th, about two weeks earlier. Although the plaintiffs and LLMC argue that this court's prior decision in Taylor should simply be read to mean that the sanction period commenced on that earlier date, there is a flip side to that argument; namely, we expressly relied on the belated nature of the discovery request, being filed on the day before the discovery cutoff, as a basis for finding the request constituted a violation of La. C.C.P. art. 1420 B.
Regardless, given the circumstances of these two cases, arising out of minor personal injury claims, we cannot say that the trial court was clearly wrong in finding that State Farm's discovery requests were unduly burdensome under La. C.C.P. art. 1420 B(3). This finding, however, does not end our inquiry. A discovery request can be both unduly burdensome and yet not warrant sanctions. Indeed, this flexibility in regulating frivolous discovery is implicit in La. C.C.P. art. 1420 D and E. Although Article 1420 D authorizes sanctions when the court finds a certification has been made in violation of the provisions of Article 1420 B, Article 1420 E provides that "[a] sanction authorized in Paragraph D shall be imposed only after a hearing at which any party or his counsel may present any evidence or argument *1146 relevant to the issue of imposition of the sanction." La. C.C.P. art. 1420 E. To conduct such an Article 1420 E hearing was the reason for our remand in both of these cases.
At the Article 1420 E hearing held on remand on October 4, 2002, State Farm's attorney, Mr. Batt, argued that although the trial court found the discovery requests inappropriate and unduly burdensome, the discovery requests were pursued for a legitimate purposeto establish bias on the part of the MHG physiciansand in good faith given the prior jurisprudence. Over State Farm's objection, the trial court allowed the plaintiffs and LLMC to offer invoices to establish the attorney's fees and costs they incurred in pursuing these motions to quash.[6] On that basis, the trial court again awarded sanctions, yet indicated there was some merit to Mr. Batt's argument and thus lowered the sanctions award to $16,000.
On appeal, State Farm argues that the trial court abused its discretion in sanctioning it for pursuing routine discovery under Article 1422.[7] Indeed, State Farm argues that its discovery request was justified by this court's recent decision in Francois v. Norfolk Southern Corp., XXXX-XXXX (La.App. 4 Cir. 3/6/02), 812 So.2d 804, which upheld a broad discovery request on a nonparty physician to establish bias or collusion with the plaintiffs' attorneys.[8] Plaintiffs and LLMC counter that this court's prior decision in Taylor and Fauria are dispositive on their right to recover sanctions and that the purpose for remand was solely to set the quantum of sanctions.
Like the trial court, we find merit to Mr. Batt's argument that even assuming the discovery was unduly burdensome, it was pursued for a legitimate purpose and in good faith in light of the jurisprudence allowing similar discovery requests. We further find that the trial court was clearly wrong in imposing sanctions under Article 1420 in these cases under these circumstances. While we find that the trial court did not abuse its discretion in quashing the discovery sought as unduly burdensome, that finding does not automatically mandate an award of sanctions.
A failure to prevail is not a basis for awarding sanctions. See Curole v. Avondale Industries, Inc., XXXX-XXXX, p. 5 (La.App. 4 Cir. 10/17/01), 798 So.2d 319, 322. "Only when the evidence is clear that there is no justification for the assertion of a legal right, should sanctions be considered." Id. Article 1420 is a statutory provision authorizing sanctions and thus must be strictly construed. See Maxie v. McCormick, 95-1105, p. 6 (La.App. 1 Cir. 2/23/96), 669 So.2d 562, 566.
Given that sanctions are reserved for extreme cases, we construe Article *1147 1420 as contemplating a sliding scale on which there are three points. First, there is a point at which the discovery request is appropriate and sanctions not warranted. Second, there is a point at which the discovery request is entirely inappropriate frivolousand sanctions are warranted. Finally, there is a middle position at which the discovery request is inappropriate, yet sanctions are not warranted. Applying that sliding scale standard to the instant cases, we conclude that these cases fall in the middle position.
Although we cannot say the trial court was clearly wrong in finding State Farm's discovery requests overly burdensome, State Farm articulated a legitimate purpose for pursuing the discovery. As we noted in Taylor, State Farm's purpose for seeking the discovery was to establish bias "to impeach the testimony of the plaintiffs' treating [MHG] physicians who are connected with respondents." Indeed, this purpose is apparent from many of the sixteen discovery requests.[9] It is well settled that if one of the MHG physicians testified at trial State Farm would be permitted to attack his credibility by showing bias. See Brown v. Bush, 98-0581 at p. 3 (La.App. 4 Cir. 4/22/98), 715 So.2d 464, 465 (citing La. C.E. art. 607). To prepare for such impeachment, State Farm should be permitted "to discover an expert's bias by discovery or subpoena." Id. (citing Rowe v. State Farm Mutual Automobile Ins. Co., 95-669 (La.App. 3 Cir. 3/6/96), 670 So.2d 718, 725). And, as State Farm stresses, in Francois, supra, we likewise recognized the need for allowing discovery to obtain the information necessary to develop a witness' bias on cross-examination at trial.
Arguing to the contrary, LLMC submits that State Farm has already taken two depositions of LLMC and should not be permitted to take a third. State Farm counters that one of those prior depositions was taken a decade ago in October 1992. The deponent of that 1992 deposition was LLMC's founder, Robert Harvey, Jr., and that deposition was taken before LLMC was even formed. The other LLMC deposition was taken more recently in July 2001 by another attorney in Mr. Batt's office, but was taken on behalf of another insurance company, Allstate Insurance Company. Plaintiffs and LLMC offered no evidence to the contrary.[10]
Summarizing, the record in these cases does not support a finding that State Farm's discovery requests were frivolous or lacking even the slightest justification. Although State Farm's attempt to conduct formal discovery to obtain impeachment evidence regarding bias of MHG's physicians was inappropriate under the particular facts of these two cases, its failure to prevail is not a grounds for sanctions. Nor did the plaintiffs and LLMC offer any evidence establishing that State Farm lacked good faith in seeking such impeachment evidence. Accordingly, we find the trial court was clearly wrong in imposing sanctions on State Farm and Mr. Batt under the unique facts of these consolidated *1148 cases.[11]

DECREE
For the foregoing reasons, the judgments of the trial court awarding sanctions are reversed.
REVERSED.
BYRNES, C.J., dissents in part with reasons.
BYRNES, C.J., Dissenting in Part with Reasons.
I agree with the majority that the trial court did not abuse its discretion in quashing the discovery sought as unduly burdensome; however, I respectfully dissent in part based on my conclusion that the trial court was not clearly wrong in awarding sanctions in addition to granting the Louisiana Medical Management Corporation ("LMMC") and the plaintiffs' motion to quash the discovery requests by State Farm Mutual Automobile Insurance Company ("State Farm").
In Hodges v. Southern Farm Bureau Cas. Ins. Co., 433 So.2d 125 (La.1983). the Louisiana Supreme Court provided the basic objectives of the Louisiana discovery process as follows: (1) to afford all parties a fair opportunity to obtain facts pertinent to the litigation; (2) to discover the true facts and compel disclosure of these facts wherever they may be found; (3) to assist litigants in preparing their cases for trial; (4) to narrow and clarify the basic issues between the parties; and (5) to facilitate and expedite the legal process by encouraging settlement or abandonment of less than meritorious claims. The discovery statutes are to be liberally and broadly construed to achieve its intended objectives. Id.
Generally, the discovery articles, La. C.C.P. arts. 1422 1425, permit discovery regarding any matter not privileged, which is relevant to the subject matter of the action. A trial court has broad discretion in handling discovery matters. Bergeron v. Pan American Assur. Co., (La.App. 4 Cir. 4/7/99), 731 So.2d 1037; Connick v. Brechtel, 98-0543 (La.App. 4 Cir. 4/22/98), 713 So.2d 583, writ denied, 98-1404 (La.6/3/98), 720 So.2d 1202.
In the present consolidated cases, the majority states that State Farm maintained that it sought discovery to obtain information to cross-examine the Metropolitan Health Group ("MHG") physicians at trial regarding their bias. State Farm's requests covered a broad range in the present cases and were overly burdensome.

Sanctions
State Farm submits that when there is even the slightest justification for the assertion of a legal right, sanctions are not warranted, citing Curole v. Avondale Industries, XXXX-XXXX (La.App. 4 Cir. 10/17/01), 798 So.2d 319. The majority notes that failure of State Farm to prevail is not grounds for sanctions, and that there was no evidence establishing that State Farm was in bad faith in seeking impeachment evidence.
Statutes that authorize the imposition of penalties, or sanctions, are penal in nature and are to be strictly construed. Consolidated Distributors, Inc. v. United Group of Nat. Paper Distributors, Inc., 32,431 (La.App. 2 Cir. 10/27/99), 743 So.2d 862. Because La. C.C.P. art. 1420 authorizes *1149 the imposition of sanctions, it must be given a strict construction. Maxie, v. McCormick, 95-1105 (La.App. 1 Cir. 2/23/96), 669 So.2d 562. A trial court's finding as to a sanctionable violation may be reversed if the record furnishes no evidence to support the finding. Id.
In the present consolidated cases, the majority refers to Francois v. Norfolk Southern Corp., XXXX-XXXX (La.App. 4 Cir. 3/6/02), 812 So.2d 804, which upheld a broad discovery request on a nonparty physician to establish bias or collusion with the plaintiffs' attorneys. State Farm asserts that because the broad discovery request was upheld in Francois, State Farm's discovery requests were not frivolous or lacking even the slightest justification in the present cases.
However, the present two consolidated cases differ from Francois. In Francois, the issue involved a class action where a subpoena duces tecum was served on the plaintiffs' medical expert relative to the alleged release of chemical vapors from a tank car. This Court granted the motion to enforce the subpoena because there was evidence that the regular treating physician, Dr. Reyes, was also the owner of the medical clinic at which the plaintiffs were being treated. This Court stated:
... Norfolk Southern quotes testimony from representatives of the proposed plaintiffs' class indicating that Dr. Reyes and their attorney essentially set up a "clinic" for the sole purpose of diagnosing plaintiffs with conditions arising from an allegedly minor release of chemical vapors from an empty tank car. The testimony reveals that Norfolk Southern's concerns about Dr. Reyes' objectivity and lack of bias are justified. Id., 812 So.2d at 806.
In the present consolidated cases, LMMC has been in business for over 20 years and was not formed for the specific purpose of treating the plaintiffs involved in a class action suit. In Francois, supra, the class action involved a large group of plaintiffs so that the discovery would be more reasonable with respect to the extensive litigation. The present claims do not involve extensive litigation.
In WSF, Inc. v. Carter, 35,581 (La.App. 2 Cir. 12/28/01), 803 So.2d 445, 449-450, the Second Circuit stated:
The petition filed by the Carters sought $1,000,000 in damages for Huddleston's alleged fraudulent alteration of the deed. The Carters subsequently filed various discovery documents seeking all financial information of Huddleston, which the trial court likened to the information disclosed in a judgment debtor rule. We agree with the trial court and Huddleston that this request for financial information sought material which was not relevant to the subject matter of the pending action, nor was the information sought reasonably calculated to lead to the discovery of admissible evidence. See La. C.C.P. art. 1422. The Carters argue that this information was necessary in order for them to justify filing a suit of this magnitude. Their position, however, was admitted by Mrs. Carter to be based on the faulty belief that they must determine the worth and assets (or ability to pay a judgment) of the defendant to justify to the trial court the amount of damages sought in their petition. The trial court found the Carters' repeated requests for the financial information to be harassing to Huddleston and imposed sanctions against the Carters. While we have found no similar cases in the jurisprudence, on this record, we find no error in the trial court's judgment. [Emphasis added.]
The Second Circuit affirmed the trial court's award of attorney's fees as sanctions.
*1150 In the present case, the parties presented evidence showing that State Farm continued to pursue its requests for extensive discovery although State Farm did not raise a counterclaim based on fraud. State Farm did not take the depositions of the LMMC doctors treating the plaintiffs. Plaintiffs' counsel pointed out that he did not refer the plaintiffs to LMMC; when another named attorney previously represented the defendants in the Taylor case, that attorney referred two of the three plaintiffs to LMMC. The previous attorney had no connection to LMMC.
The parties referred to judgments in different cases in the district court concerning State Farm's requests for extensive discovery that were comparable to the requests made in the present case. The trial court judgments limited the requests. State Farm asserts that in those cases the trial court did not award sanctions.
However, considering that the previous trial court judgments in similar cases limited discovery to medical records and other documents pertaining to those plaintiffs, State Farm previously had been informed and was well aware that its discovery requests were overly burdensome. State Farm had been provided with all the medical documents concerning the plaintiffs in the Taylor and Fauria cases. Although sanctions were not awarded in prior cases, State Farm continued to pursue the same tactic in filing similar extensive discovery requests in the present consolidated cases.
In addition, State Farm did not request discovery in the Taylor case until right before the discovery cutoff date even though the information would take a great deal of time for the opposing parties to compile and complete. Further, State Farm did not file a timely opposition to the motions to quash brought by LMMC and the plaintiffs. The trial court allowed State Farm to argue at the July 12, 2002 hearing, but noted that it would award attorney's fees in the event that State Farm did not prevail in order to compensate for permitting State Farm to contest the motions to quash. After the trial court's original judgment of July 12, 2002, State Farm did not file its writ application in this Court until late in the afternoon on July 31, 2002. A response was due the next day by 4:00 p.m. on August 1, 2002. The writ was given emergency consideration because the trial was set in Taylor for August 5, 2002.
In the present two consolidated cases, this Court affirmed the trial court's judgments that granted the motions to quash filed by the plaintiffs and LMMC. In granting the writ applications in part, this Court remanded the Taylor and Fauria cases for a hearing to provide evidence to determine whether sanctions are warranted. If this Court had found that no sanctions were warranted, there would be no need to remand these two cases.
Another factor supporting sanctions is that the personal injuries sustained in these cases concerned soft tissue injuries. The medical testing would not provide a definitive determination as to the extent of the injuries. The physicians, chiropractors, or other medical personnel had to rely on the patients' history of their injuries. The diagnoses rested on the plaintiffs' complaints.
The plaintiffs were not treated on a long-term basis, and the amount of damages involved was limited. The plaintiffs' attorney claims that the opposing party filed discovery, prolonging the litigation and necessitating opposition that is unreasonable. State Farm's discovery requests are tactically designed to make pursuit of a claim for soft tissue injuries "more trouble than it is worth." State Farm's requests were even more burdensome considering the type of the claims involved.
*1151 The majority suggests that using a sliding scale, this case is in a middle position at which the discovery request is inappropriate, yet sanctions are not warranted. However, considering the factors discussed above, it has reached the point where the trial court was not clearly wrong in awarding sanctions in the form of attorney's fees. State Farm was aware that the trial courts had denied or limited its discovery requests to documents concerning various plaintiffs in the past. Considering that State Farm continued to pursue the burdensome discovery requests, the trial court did not abuse its discretion in finding that sanctions now are warranted where State Farm's requests are repetitive. The plaintiffs and LMMC spent additional time in the present two cases to contest State Farm's discovery requests. The trial court was not clearly wrong in awarding attorney's fees for the additional work involved.

Attorney's Fees
State Farm asserts that the opposing attorneys did not produce any evidence warranting attorney's fees at the July 12, 2002 trial court hearing.

State Farm's Claim that Attorney's Fees Should Be Limited to Taylor
In its January 10, 2003 brief, State Farm states that:
... Implicit in this ruling [of this Court] was the finding that the sanctions in the Taylor matter were due, in part, because the return on the subpoenas and notices were due one day before the close of discovery, as set by the trial court's scheduling order. This Circuit found the discovery requested to be "late" though "technically timely." It follows that where, as in the Fauria matter, there was no discovery cutoff, the discovery should not be sanctioned as untimely. [Emphasis supplied in text.]
In its ruling of August 2, 2002, in the Taylor case, this Court stated:
[W]e find the trial court did not abuse its discretion in quashing the depositions and subpoenas and awarding sanctions that are permitted under La. C.C.P. art. 1420 D. We therefore deny relator's application for supervisory writ on that issue. [Emphasis added.]
In the Fauria case, this Court ruled on the same date:
For the reasons assigned by this Court in case No.2002-C-1516, Taylor v. Manchester, we find no abuse of the trial court's discretion in quashing the depositions and subpoenas and awarding sanctions permitted by La.Code Civ. Proc. art. 1420D. [Emphasis added.]
Additionally, for reasons cited in case No.2002-C-1516, we remand this matter to the trial court for an assessment of the appropriate sanction to be imposed.
This court found that the trial court abused the amount of the awards for sanctions in both cases but remanded for consideration of the amount of sanctions, if any, that can be imposed based on the evidence. Whether or not there was no discovery cutoff date set in Fauria, there were additional reasons as previously discussed above, to find that attorney's fees were warranted in both cases.

State Farm's Claim that Attorney's Fees Should Be Limited to LMMC
State Farm also argues that sanctions, if any, should only be awarded to the attorney for LMMC and not to the plaintiffs' attorney. State Farm avers that plaintiffs' counsel was not obligated to oppose discovery sought from LMMC and MHG, and he almost certainly represented his clients on a contingency basis so that they had no additional expense.
*1152 However, counsel for the plaintiffs as well as counsel for LMMC both filed and argued the motions to quash. The plaintiffs' attorney had to represent his clients in the proceedings to ensure that the plaintiffs' interests were protected. The trial court was not clearly wrong and did not abuse its discretion in awarding attorney's fees to both LMMC and the plaintiffs' counsel.

State Farm's Claim of Double Billing
State Farm avers that the issues in Taylor and Fauria were combined at one hearing so that State Farm should not be billed for both cases. State Farm contends that the invoices represented double billing. However, LMMC points out that the time spent on the cases was split between the two invoices, and the invoices represents split billing. LMMC explains that the time spent preparing for and arguing in court the motion to quash was approximately four hours and each client was billed for two hours as shown in the invoices. The claim of double billing is unsubstantiated.

State Farm's Claim as to Time Period
State Farm further maintains that in its initial ruling on the writ application, this Court noted that any award should be limited to work done to successfully quash the depositions and subpoenas, which occurred between June 12, 2002 and July 12, 2002.
Just as statutes are subject to interpretation, the same is true about the rulings of courts. In Broussard v. F.A. Richard & Associates, Inc., 98-1167 (3//17/99), 732 So.2d 578, appeal after remand, 99-10 (La. 3 Cir. 5/5/99), 740 So.2d 156, writ denied, 99-1048 (La.6/4/99), 744 So.2d 625, the Third Circuit held that courts should avoid a construction of a statute which would lead to absurd results; the statute must be interpreted in such a manner as to render its meaning rational, sensible, and logical. Similarly, the ruling of a court should be interpreted to avoid a construction that would lead to absurd results. The ruling should be interpreted in such a manner as to render its meaning rational, reasonable, and logical.
In the present case, in its August 2, 2002 ruling, this Court stated that the awards for attorney's fees should be for:
the period of 12 June 2002 (the date the notice of deposition and subpoena were issued) through 12 July 2002 (the date the motion to quash was heard and disposed of by the trial court) that resulted in the successful quashing of the depositions and subpoenas.
The date of June 12, 2002 is inconsistent with the date of the notice that the deposition and subpoena were issued. Because the dates are not the same, the date must be corrected for this Court's ruling to be consistent. The plaintiffs and LMMC maintain that the date of the notice of deposition and subpoena were issued is actually May 28, 2002. The time period to be considered should be May 28, 2002 through the date of the hearing on July 12, 2002.
Regardless of the difference in the time period, this Court limited the sanction to attorney's fees based on work performed with respect to the issue of the production of State Farm's discovery requests, ending with, but including, the trial court hearing on the motions to quash on July 12, 2002.

State Farm's Claim Rejecting Consideration of Invoices
State Farm claims that the invoices for attorney's fees should not be considered because the invoices were not before the trial court in the July 12, 2002 hearing.
In In re Succession of Boyter, 99-0761 (La.1/7/00), 756 So.2d 1122, the Louisiana *1153 Supreme Court concluded that courts should give effect to language in a statute so that the language is interpreted in a manner which is consistent with logic and the presumed fair purpose and intention of the legislature. As discussed previously, court rulings should be interpreted in a manner that is consistent with logic and presumed to have a fair purpose to achieve the intention of the courts.
This Court's ruling in Taylor stated in part that:
We remand this matter to the trial court to assess an appropriate sanction to be imposed, if any, based upon the evidence in the record as it presently exists and only for the actual time incurred by attorneys for and actual necessary expenses....
State Farm asserts that this Court limited the evidence to that which presently existed at the time of this Court's ruling. If this were the intent of this Court, there would be no need to remand this case for evidence concerning the amount of attorney's fees because there were no invoices before this Court at that time. To reach a reasonable result, the intent of this Court must be interpreted to mean that this Court remanded the cases for consideration of evidence limited to represent the amount of work performed as it presently existed at the time of this Court's ruling. This Court instructed the trial court to assess sanctions based "only for the actual time incurred by attorneys." If the invoices representing the work involved during that time period could not be considered, a remand would be meaningless.
The trial court considered the invoices presented by the plaintiffs' attorney and LMMC's counsel. Based on the evidence, the trial court did not abuse its discretion in determining the amount of the award for attorney's fees to be $4,000 for both attorneys in both cases for a total of $16,000.
Accordingly, I would not only affirm the trial court's ruling that granted the motions to quash, but would affirm the trial court's award of attorney's fees assessed against State Farm. Further, I would assess the costs of the appeal to State Farm.
NOTES
[1] MHG did not file any motion and is not a party to these appeals.
[2] On State Farm's motion, we consolidated these appeals.
[3] More particularly, the record reflects that in Taylor all three plaintiffs treated for personal injuries shortly after the accident. First, Mr. Taylor treated twice with Dr. Ott (on October 26th and November 15th, 2000) for a "thoracolumbar strain with spasm." Dr. Ott's final report dated March 2, 2001, indicates that Mr. Taylor failed to return for a scheduled follow-up appointment. MHG's billing statement reflects that Mr. Taylor underwent physical therapy on several occasions in October and November 2000 and that his total MHG bill was $571.50. Second, Alvin Armour treated with Dr. Lamid on October 31, 2000 for a cervical strain, lumbar strain, left wrist strain, and right shoulder strain. Dr. Lamid also saw Mr. Armour for reevaluations on four subsequent occasions (November 9th and December 11th, 2000, and January 18th and March 22nd, 2001). At the final visit, Dr. Lamid noted Mr. Armour's symptoms had resolved, and discharged him from treatment. MHG's billing statement reflects that Mr. Armour underwent physical therapy on multiple occasions between October 2000 and February 2001. Mr. Armour's total MHG bill was $1,903. Third, Ralph Gavin treated at American Chiropractic Clinic, not at MHG, and his medical bills totaled $2,915. The record also reflects that a bench trial was held in Taylor in August 2002. Following the trial, the trial court rendered judgment in favor of the three plaintiffs for over $50,000 in damages, and that judgment has been satisfied. The Fauria case has not yet been tried.
[4] Although plaintiffs argue that this court did not mean to restrict the award of sanctions to the non-party (LMMC), that we mistakenly noted the date of the subpoena as June 12th, and that we did not mean to preclude them from introducing invoices to establish their attorney's fees and costs on remand, we find it unnecessary to reach those issues as we reverse the sanctions award on other grounds.
[5] La. C.C.P. art. 1420 B provides:

The signature of an attorney or party constitutes a certification by him that he has read the request, response, or objection and that the best of his knowledge, information, and belief formed after reasonable inquiry the request, response, or objection is: (1) consistent with all the rules of discovery and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; (2) not interposed for any improper purpose, such as to harass or to cause unnecessary or needles increase in the cost of litigation; and (3) not unreasonable, unduly burdensome, or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation.
[6] State Farm's objection was based on this court's instructions limiting the trial court on remand to the record as it then existed.
[7] Although State Farm also argues that the sanctions were inappropriate because another associate in Mr. Batt's firm actually signed the discovery requests, we decline to decide this case on that basis. Indeed, we note that while the Louisiana Legislature has not amended La. C.C.P. arts. 1420 or 863, the federal rule, Rule 11, has been amended to provide that courts may sanction "attorneys, law firms or parties," as opposed to simply the signer of documents. Fed.R.Civ.P. Rule 11(c).
[8] Although in Taylor we found no abuse in discretion in the trial court's decision to quashing the discovery, we acknowledged that "we do not determine that relator [State Farm] is prohibited at the merits trial from appropriately developing bias of any witness within the ordinary rules set forth in the Louisiana Code of Evidence or jurisprudence."
[9] Although State Farm generated a laundry list of items it contends supports its suspicions of bias based on the operation of MHG and its management company, LMMC, we do not find it necessary to repeat that list.
[10] Although the plaintiffs and LLMC refer to cases in which similar discovery requests have been quashed, in none of those cases were sanctions awarded. Moreover, this court in Taylor found the trial court's reliance on such discovery attempts in other unrelated cases misplaced. We further note that State Farm refers to cases in which similar discovery requests have been permitted at least in part.
[11] Plaintiffs and LLMC also complained that State Farm's brief did not comply with this court's uniform rules because it exceeded the page limits. However, we find that issue moot because State Farm, by motion, has filed a replacement brief with identical content in a smaller font that complies with this court's rules.