| MOAN BERNARD ARMSTRONG, Chief Judge.
The relator, Dana Johno, LLC, seeks review of a judgment ordering the production of the bank records of Dana Johno and Dana Johno, LLC. The judgment was orally rendered on August 12, 2004 and a written judgment was signed on September 29, 2004.[1]
In October of 2003, the relator filed a Petition for Breach of Insurance Contract and Damages against Centennial Insurance Company (Centennial), Allied Security Insurance Agency, Inc. (Allied) and Gregory Scott Wheeler. Centennial is the alleged insurer of the relator’s boat, Allied is the agency that obtained the insurance on the boat, and Mr. Wheeler is the alleged agent of Allied. The relator alleged that the defendants are liable for failing to compensate it for the loss of its boat, which was destroyed when Hurricane Lily passed through the Parish of Plaquemines, causing the boat to sink. In April of 2004, the defendants requested the issuance of a subpoena duces tecum to Mississippi River Bank (the bank) for the production of certified copies of bank records for Dana Joh-no, L.L.C. or Dana | ¡Johno. The relator filed a motion to quash the subpoena duces tecum. The motion was allegedly unopposed.
Subsequently in May of 2004 the defendants scheduled a records deposition for the same records. The deposition was to occur on July 2, 2004. The relator again filed a motion to quash the subpoena alleging that the records were irrelevant to the lawsuit and that their production was not calculated to lead to discovery of relevant information.
On August 12, 2004, the trial court ruled in favor of the defendants and ordered the production of the bank records of Dana Johno and Dana Johno, L.L.C. from the date of the purchase of the boat to the present date. The relator seeks a reversal of that judgment and an order quashing the subpoena duces tecum directed to the bank.
*34 The relator argues three assignments of error in support of its writ application. First, it argues that the court erred in finding that its bank records are discoverable under La. R.S. 6:333 because the requested documents are not relevant to the subject matter involved in the pending action.
Ordinarily, documents such as bank records and tax returns are confidential documents. The exclusive method for obtaining records from a bank is found in La. R.S. 6:333. La. R.S. 6:333 C allows a bank to disclose financial records pursuant to a disclosure demand, but only if the statutory requirements are met prior to such disclosure. Additionally, in order to require the production of bank records over an objection, a party seeking production must make showings of relevancy and of good cause for production. Ouachita Nat. Bank in Monroe v. Palowsky, 554 So.2d 108 112 (La.App. 2 Cir.1989). In Palowsky, the seminal case detailing what is needed to obtain bank records, the defendant filed a ^subpoena duces tecum for records related to bank loans made to nonparties to the litigation. The trial court refused to quash the subpoena; but the Second Circuit reversed because the defendant failed to show the relevancy of the records and that he had good cause to discover the records of nonlitigants. The court noted that personal financial information was not to be made public except either to satisfy the important interests of others or where there was an overriding public interest in the disclosure.
In them memorandum in opposition to the motion to quash, the defendants argued that the relator’s bank records are relevant to proving or disproving the alleged elements of damages. Included in the damages sought by the relator are damages for- “loss of income”, “continued expenses for preservation of the skiff’, and “additional financial loss due to petitioner’s continuing obligation to pay lender principal and interest on the boat mortgage.” In paragraph 11 of the relator’s petition for breach of insurance contract and damages, the relator seeks damages for various types of losses allegedly suffered as the result of the loss of his boat and the failure of the defendants to promptly pay his claim. The defendants argued that the information contained in the bank records would best allow them to evaluate the validity and extent of the relator’s alleged losses and expenses. They also argued that the bank records should confirm the company’s alleged, continued mortgage payments on the skiff, ■ as well as other expenses allegedly incurred in preserving the skiff. Additionally, they averred that a year-to-year comparison of Dana Johno, L.L.C.’s bank records should also allow defendants to verify the company’s claimed loss of income.
No written reasons for judgment have been provided. However, it appears the trial court determined that the defendants made the necessary showing that the 1 information being sought was relevant. Having reviewed the defendants’ subpoena and the relator’s motion to quash, and being aware of the facts alleged in the petition, the trial court, in its discretion, apparently concluded that the defendants’ right to obtain the bank records outweighed the relator’s right to banking privacy. The production of confidential documents to assist in valuing claims has been allowed by this court. See Borrello v. Borrello, 614 So.2d 91 (La.App. 4 Cir.1992), wherein this Court allowed the wife of a partner in a law firm to obtain information on the firm’s contingency fee contracts and the firm’s state and federal tax returns, noting that the tax returns would aid the wife in establishing the value of the partnership. ' Because the relator in the instant case placed its financial affairs in question, it does not appear that the trial court abused its discretion by ordering *35 production of the relator’s bank records. The relator’s first assignment of error has no merit.
Next, the relator argues that even if some of the records are discoverable, then the court erred in failing to order some less intrusive methods of discovery. In this assignment of error, the relator avers that the bank records are not relevant to his claim for damages because the boat was destroyed before any practical income could be earned and the boat remains un-repaired as the claim for damages has yet to be honored. For this reason, he argues that any loss of earnings award would have to be based upon lost future earnings that would not be reflected in a bank statement. Further, relator argues that documentation of repairs and maintenance of the vessel has been provided to the defendants by way of receipts for parts and estimates for repairs. Additionally, he argues that the defendants’ right to know about payment of the note on the vessel could be adequately satisfied by an order for the production of the specific checks involved and would be less invasive. | .^Whether the defendants could have obtained sufficient information to ascertain the amount of loss of income and/or the other requested information by other means is unknown because the writ application is devoid of any information to support this supposition. This argument was not made in the relator’s motion to quash. Thus, unless it was raised in oral argument, it does not appear that this argument or request was made in the trial court. Rather, the relator merely argued that the bank records of the company are not relevant and that Dana Johno’s records are not discoverable because he is not a party to the litigation.
A trial court has broad discretion in handling discovery matters. Fauna v. Dwyer, 2002-2320 (La.App. 4 Cir. 9/24/03), 857 So.2d 1138, 1148, citing Bergeron v. Pan American Assur. Co., (La.App. 4 Cir. 4/7/99), 731 So.2d 1037 and Connick v. Brechtel, 98-0543 (La.App. 4 Cir. 4/22/98), 713 So.2d 583. The trial court’s broad discretion in ruling on pretrial discovery includes the right to refuse or limit discovery of matters that are not relevant to the issues. Fauria v. Dwyer, 2002-2320 (La.App. 4 Cir. 9/24/03) 857 So.2d. 1138, 1148; King v. Phelps Dunbar, L.L.P., 01-1735 (La.App. 4th Cir.4/2/03), 844 So.2d 1012, writ denied, 2003-1220 (La.11/21/03), 860 So.2d 541. The relator fails to show how the trial court erred in failing to select some method of discovery other than production of bank records to assist in the determination of the losses suffered as a result of the loss of the boat. This assignment of error has no merit.
Finally, the relator argues that even if the court were correct in ordering the production of its records, it erred in ordering the production of the personal financial records of Dana Johno, as Mr. Johno is not a party to this lawsuit. Facially the argument that the court should not have ordered the production of the personal records of Mr. Johno because he is not a party to the litigation appears to | fihave merit. However, this court has recognized that personal financial records might be needed in order to determine damages or valuation in some situations. Thus, in Carter v. Baham, 95-2126, p. 13(La.App. 4 Cir. 10/09/96), 683 So.2d 299, 307, this court recognized that:
[A] professional’s own loss of past and future earnings cannot be fairly determined from the business records of a professional corporation alone. Instead, an injured professional should provide personal tax records, which can be supplemented by all other evidence of income and expenses, including the records of the professional corporation. Without a professional’s personal tax returns, a factfinder faces tre *36 mendous difficulty in evaluating such inherently speculative damages, which are at best, even when fully documented, insusceptible of calculation with mathematical certainty. The lack of adequate documentation in the instant case may have contributed to the jury’s decision to embrace the testimony of an expert economist, whose methodology failed to consider the plaintiffs degree of disability. [Emphasis added.]

Id.

This same rationale also applies to bank records. Inasmuch as the unofficial record from the Secretary of State reflects that this limited liability company appears to only have one member, i.e. Dana Johno, it does not appear that the trial court abused its discretion by also ordering production of the bank records of Dana Johno, the sole member of the company.
For the foregoing reasons, the relator’s application for supervisory writs is denied.
WRIT DENIED.

. The relator filed its notice of intent to seek supervisory writs on September 10, 2004, and the trial court signed an order directing the relator to file its writ application with this court by October 20, 2004. The initial writ application was filed in this court on September 23, 2004. The relator supplemented his writ application with a copy of the judgment and the order setting the return date on October 13, 2004.