ROBERT M. MURPHY, Judge.
[ aDefendants-appellants, James Pierce (“Pierce”), U.V. Logistics, LLC (“UVL”), U.V. Insurance Risk Retention Group, Inc., and Zurich American Insurance Company (collectively, “Defendants”) appeal from an adverse judgment after a jury trial, rendered on July 15, 2014. Defendants also appeal the trial court’s September 18, 2014 judgment, which granted the motion for judgment notwithstanding the verdict (“JNOV’) filed by Plaintiff-appel-lee, Natalie Lockett (“Plaintiff’), and increased her award of general damages from $25,000 to $175,000; and the trial court’s September 8, 2014 judgment, which denied Defendants’ motion for new trial on the issue of the trial court’s application of the collateral source rule. Finally, Defendants and their counsel appeal the trial court’s July 29, 2014 judgment, which granted the motions for sanctions, attorney’s fees and costs, filed by non-party movers, K.E. Vogel, M.D. (A Medical Corporation) (“Vogel AMC”) and F & C Management Group d/b/a The Health Care Center (“HCC”). Subsequently, upon leave of this Court, Defendants and their counsel filed, for the first time, an exception of no right of action as to the motions for sanctions, attorney’s fees and costs filed by Vogel AMC and HCC.
For the reasons that follow, we affirm the trial court’s July 15, 2014 judgment, the September 18, 2014 judgment granting Plaintiffs motion for JNOV, and the September 8, 2014 judgment denying Defendants’ motion for new trial. |4We sustain Defendants’ exception of no right of action, and thus, we vacate the trial court’s July 29, 2014 judgment granting Vogel AMC’s and HCC’s motions for sanctions, ■ attorney’s fees and costs.
FACTS AND PROCEDURAL HISTORY
The instant appeal arises out of an action filed by Plaintiff for personal injuries sustained in an automobile accident that occurred on April 15, 2011 at the intersection of Jefferson Highway and Powerline Drive. Plaintiff alleged that as her vehicle was in the left-turn lane of Jefferson Highway, the passenger side of her vehicle was struck by a semi-truck and trailer attempting to make an illegal left turn. The semi-truck and trailer involved in the accident was owned and operated by Pierce. However, at the time of the accident, Pierce leased the semi-truck and trailer to UVL as an independent contractor.
The matter proceeded to a four-day jury trial from June 9, 2014 through June 12, 2014. At trial, Plaintiff, a registered nurse and supervisor at East Jefferson Hospital, sought damages for injuries to her neck and lower back. Plaintiff first sought treatment for her injuries on the morning after the accident, April 16, 2011, at the East Jefferson after-hours clinic from Dr. Brett Rothaermel. Dr. Rothaermel diagnosed Plaintiff with neck pain, shoulder strain, and lower back pain.
Two days later, Plaintiff sought treatment from Dr. Gloria Kang, a physiatrist. At the time of her first visit with Plaintiff, Dr. Kang diagnosed Plaintiff with cervical and lumbar sprain/strain. However, after Dr. Kang sent Plaintiff to have an MRI in June of 2011, the MRI results revealed that Plaintiff also had herniated discs in her cervical and lumbar spine. Dr. Kang opined that Plaintiffs injuries were caused by the accident of April 15, 2011. She *561 continued to treat Plaintiff until August of 2011, at which point she determined that she had provided Plaintiff with the maximum benefit of care her office was capable of | ¡¡providing, and thus, she recommended that Plaintiff see a neurosurgeon for further treatment.
Plaintiff began treating with Dr. Kenneth Yogel, a neurosurgeon, on August 15, 2011.Based upon Plaintiffs MRI results, Dr. Vogel determined that Plaintiff had two herniated lumbar discs and two small herniations in her cervical spine. At the next two visits on September 15, 2011 and October 31, 2011, Dr. Vogel noted that Plaintiff had neck and back pain with spasms in her neck, and sciatic nerve pain in her lumbar region. On December 8, 2011, Dr. Vogel noted that Plaintiffs neck pain was improving, but she indicated that her back pain was intractable and that she could not live with it any longer. As a result, Dr; Vogel recommended that Plaintiff undergo a lumbar discogram to determine if her two herniated lumbar discs were generating her pain. The discogram showed abnormal results in two of Plaintiffs lumbar discs.
On January 18, 2012, Dr. Vogel performed lumbar surgery on Plaintiff, which consisted of a microsurgical discectomy. Plaintiff went home on the same day as her surgery, and she missed two months of work following the surgery. Plaintiff returned to work in March of 2012, and did not miss any other days of work related to her injuries. Following her surgery, Dr. Vogel sent Plaintiff to physical therapy and he continued to treat her until June of 2012. At his last visit, Dr. Vogel noted that Plaintiff still had mild low back pain, cervical pain, and right shoulder pain. He assigned Plaintiff a 10% to 15% whole body impairment. Dr. Vogel opined that due to her whole body impairment, Plaintiff will need future medical care to treat flare-ups of pain that she' will experience two to four times a year throughout her life. He further opined that more probably than not, Plaintiffs injuries and his medical treatment for those injuries were caused by the accident at issue.
| (Approximately one year after her surgery, Plaintiff began treating with Dr. Olga Krivitsky, a physiatrist, on January 8, 2013.Plaintiff sought treatment from Dr. Krivitsky for post-surgical care ' and for continued pain in her neck and back. Dr. Krivitsky diagnosed Plaintiff with post-surgical laminectomy and cervical radiculo-pathy. During her treatment of Plaintiff, Dr. Krivitsky administered trigger point injections to Plaintiff in an attempt to alleviate her pain. In March of 2013,' Dr. Krivitsky diagnosed Plaintiff with failed back surgery syndrome, which she explained as a condition in which a patient’s pain does not improve after surgery, despite the fact that the surgery was performed correctly.
Dr. Krivitsky opined that Plaintiff will continue to have some 'degree of pain throughout her life, which will require medications, trigger point injections, and possibly physical or occupational therapy. Dr. Krivitsky further opined that Plaintiffs injuries and medical treatment were, more probably than not, caused by the accident of April 15, 2011. Plaintiff was still treating with Dr. Krivitsky at the time of trial.
As a result of the accident, Plaintiff sought damages for past medical expenses in the amount of $100,826.99. As to future medical expenses, Plaintiff called Nathaniel Fentress to testify as to the life care plan he prepared for her. Fentress testified that Plaintiff would require future medical expenses over the course of her 30.1 year life expectancy, consisting of doctor’s appointments, medication, physical or chiropractic therapy, a Sealy posturepedic *562 mattress every ten years, and an exercise program. He valued her life care plan at $6,747.26 per year, for . a total of $230,092.60 for 30.1 years of care.
In' addition to thé evidence of the- aforementioned injuries, Plaintiff also introduced evidence of her prior treatment for low back pain and sciatica by Dr. Robert Mimeles, an orthopedic surgeon. Specifically, Dr. Mimeles testified, via | Reposition, that he treated Plaintiff on four occasions in December of 2004; January of 2006; January of 2008, and July of 2009.' When he first treated Plaintiff in December of 2004, Dr. Mimeles testified that she reported experiencing low back pain that- radiated into her right thigh after picking up her 17-month old child. Dr. Mimeles believed that Plaintiff had a pinched nervé in her back and sciatica, for which he prescribed anti-inflammatories and administered cortisone shots. Dr. Mí-meles’ records from his - examination of Plaintiff in January of 2008 indicate that she reported experiencing back pain on and off over the- last three years. He further testified that his records indicated that he recommended to Plaintiff on three occasions that she would need an MRI, if her pain continued. However, his records did not indicate that Plaintiff obtained an MRI at that time.
Defendants questioned all four of Plaintiffs treating physicians about whether Plaintiff informed them of her history of prior low back pain and sciatica, or of her treatment with Dr. Mimeles for those complaints. Dr. Kang testified that according to her records, Plaintiff denied any prior neck or back injuries, but that Plaintiff reported a prior history of sciatica in 2004, from which she recovered in about two weeks. Dr. Vogel testified that Plaintiff informed him that she had spontaneous low back pain eight years prior, but that the pain had completely resolved. Neither Dr. Kang’s records, nor Dr. Vogel’s records reflected that Plaintiff informed them that she sought treatment from Dr. Mi-meles for back pain or sciatica. Dr. Kri-vitsky testified that Plaintiff fully informed her of the extent of her treatment with Dr. Mimeles for low back pain. .However, Dr. Krivitsky stated that she did not record Plaintiff’s treatment with Dr. Mimeles in her notes because she determined that it was a remote history that should not be included in her first evaluation. Finally, Dr. Rothaermel testified, via deposition, that his notes from his examination of Plaintiff on the day after the accident did not reflect that | ^Plaintiff informed him of her history of prior back pain, or of her treatment with Dr. Mimeles.
Dr. Vogel, Dr. Kang, and Dr. Krivitsky each testified that prior to trial, they had an opportunity to review Dr. Mimeles’ records related to his treatment of Plaintiff. All three treating physicians testified that Dr. Mimeles’ records did not change their opinions that, more likely than not, the accident of April 16, 2011, caused Plaintiff’s injuries and the medical treatment that each physician provided to Plaintiff. Specifically, Dr. Vogel admitted that he believed that it would have been appropriate for Plaintiff to tell him about her prior treatment with Dr. Mimeles, if she had remembered. However, he believed that the fact that Plaintiff was asymptomatic for the two years between her last appointment with Dr. Mimeles and the date of the accident medically suggested that Plaintiff had healed from the low back injury reflected in Dr. Mimeles! records.
Plaintiff testified that she initially saw Dr. Mimeles in 2004 when she experienced back pain after picking up her -son. She explained that the back pain she experienced at that time was mild and did not seem serious. Plaintiff did not get an MRI at the time Dr. Mimeles suggested *563 that she have one because she did not feel her pain was that bad. She testified that she informed Dr. Kang and Dr. Vogel of her complete history of treatment with Dr. Mímeles, even though the full history was not reflected in their records'.
As to the back pain she experienced after the accident of April 15, 2011, Plaintiff described that pain as different from the back pain she experienced while treating with Dr. Mímeles. Specifically, Plaintiff described her post-accident back pain as excruciating and sharp, which ultimately reached a point where she could no longer bear it. As a result, Plaintiff decided to undergo lumbar surgery with Dr. Vogel.
IsSince her surgery, Plaintiff testified that she still experiences pain in her back, neck and shoulder area. She described some, days as better than others, but complained of severe pain in the mornings which .prohibits her from getting out of bed easily and going to the bathroom. She sleeps with a heating pad at night, and takes pain medication, muscle relaxers, and Melatonin to help her sleep. She also claimed that her injuries prevent her from partaking in certain activities, such as going to Saints games, going shopping with her friends, and walking with her. son in his school’s marching band. Plaintiff admitted that in completing her renewal application for her nursing license for the years of 2012, 2013, and 2014, she stated that she did not have a physical condition that affected her ability to safely practice as a registered nurse.
Defendants’ expert in the fields of orthopedics and biomechanics, Dr. James M. Laborde, opined that, more likely than not, Plaintiffs lumbar disc herniations occurred during the time of her treatment with Dr. Mímeles in 2004 through 2009. Dr. La-borde testified that he believed Plaintiff possibly suffered a minor muscle sprain in the accident, which magnified problems she was experiencing due to the aging process. After examining Plaintiff and reviewing her MRI results,. Dr. Laborde stated that the results were best explained by the aging process. He testified that the accident possibly aggravated her condition, -but that the treatment would normally be non-pperative. ■
Dr. Laborde also based his medical opinion on the motor vehicle áccident reconstruction conducted by Dr. Richard Barra-ta, Defendant’s expert in biomechanics and accident reconstruction. ' Dr. Barráta analyzed the dynamics of the accident and the contact between the two vehicles involved, in an effort to determine what kind' of motions and load Plaintiff would have experienced in the accident. Dr. Barrata determined that the accident was a shallow sideswipe at, a [10speed of two miles per hour, which consisted, of sliding contact between the vehicles, minor vibrations, and shaking. He also testified that Plaintiffs claim that her vehicle was dragged across the lanes of traffic was not supported by the physical evidence. Based upon Dr. Barrata’s findings,, Dr. Laborde opined that there was,a low probability of injury to Plaintiff as a result of the accident.
Plaintiff called Senior Trooper Trey J. Elliot of Louisiana State Police to testify as an expert in the fields of accident investigation and ' accident reconstruction. Trooper Elliot testified that the crash was minor,' and that it caused a minimal amount of damage. He further testified that he estimated the speed of Pierce’s vehicle at the time of the accident to be fifteen miles per hour, and- that Plaintiffs vehicle was stopped at the time.
On June 12, 2014, the jury returned a verdict finding that Pierce was negligent in the accident of April 15, 2011, and that he *564 was 100% at fault for the accident.[1] However, the jury’s finding of liability is not at issue in this appeal. The jury also responded affirmatively to the interrogatory which asked, “[d]o you find that [Piercej’s negligence in the motor vehicle accident of April 15, 2011 caused any injuries sustained by [Plaintiff].” Accordingly, the jury awarded damages- to Plaintiff as follows:
Physical pain and suffering (Past) $15,000 Physical pain and suffering
(Future) $0.00
Mental anguish (Past) ■ $5,000
Mental anguish (Future) $0.00 •
Loss of enjoyment of life (Past) $5,000
Loss of enjoyment of life (Future) $0.00
Medical expenses (Past) $100,826.99
Medical expenses (future) $21,000
Lost wages (past) $10,572.80
Total $157,399.79
|nThe trial court signed a judgment on July 15, 2014 in favor of "Plaintiff and against Defendants, in accordance with the jury’s verdict. On July 21, 2014, Plaintiff filed a motion for JNOV, or in the 'alternative, additur, or' in the alternative, for new trial, on the issue of general damages. Specifically, Plaintiff argued that the jury’s award of $25,000 for past pain and suffering, mental anguish, and loss of enjoyment of life, and its failure to award any damages for future pain and suffering, mental anguish or loss of enjoyment of life, constituted an abuse of the jury’s discretion,, in light of the evidence presented at trial and given the jury’s finding of medical causation. After conducting .a hearing, the trial court signed a judgment on September 18, 2014, granting Plaintiffs motion for JNOV. The judgment provided that “Plaintiffs award for general damages and for damages for loss of enjoyment of life is increased to $175,000.” In their first assignment of error, Defendants appeal the trial court’s grant of Plaintiffs motion for JNOV on the issue of general damages. • .
In their second assignment of error, Defendants appeal the trial court’s September 8, 2014 judgment denying their motion for new trial. In their motion for new trial, Defendants requested reconsideration of the trial court’s prior ruling on the application of the.collateral source rule to medical expenses that one of .Plaintiffs medical providers, Ochsner, “wrote-off” of Plaintiffs medical bill, after Plaintiff personally negotiated and paid a reduced amount of the total bill to Ochsner as a private-pay patient, instead of making the payment through her insurance provider.
Finally, in their third assignment of error, Defendants and their counsel appeal the trial court’s July 29, 2014 judgment, granting the motions for sanctions, | ^attorney’s fees and costs, filed by Plaintiffs treating physicians Vogel AMC[2] and HCC.[3] Upon leave of this Court, Defendants and their counsel subsequently filed, for the first time on appeal, an exception of ho right of action as to the motions for sanctions, attorney’s fees and costs filed by Vogel AMC and HCC. In their exception, Defendants and their counsel assert that Vogel AMC and HCC have no right of action for sanctions under La. C.C.P. art. 1420(D) because they are not parties to this litigation, as set forth in Article 1420(D). In their appellee briefs, Vogel AMC and HCC have requested an award of damages against Defendants under La. C.C.P. art. 2164 for filing a frivolous appeal.
*565 LAW AND ANALYSIS

Defendants’First Assignment of Error:

In their first assignment of error, Defendants contend that the trial court erred in granting Plaintiffs motion for JNOV and increasing Plaintiffs general damage award from $25,000 to $175,000 because they presented evidence from which the jury could have concluded that Plaintiff sustained no injury, or only a minor injury, and associated pain and suffering, as a result of the accident. Plaintiff contends that the trial court properly granted her motion for JNOV because the jury’s general damage award was inadequate, in light of the evidence and the jury’s finding as to medical causation. ■
The Louisiana Supreme Court set forth the standard for determining when a JNOV has been properly granted in Joseph v. Broussard Rice Mill, Inc., 00-0628 (La.10/30/00), 772 So.2d 94, 99, as follows:
A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach Indifferent conclusions, not merely when there is a preponderance of evidence for the mover. The motion should be denied if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. This rigorous standard is based upon the principle that when there is a jury, the jury is the trier of fact.
In reviewing' a JNOV, the appellate court must first determine if the trial judge erred in granting the JNOV. This is doné by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion or not, i.e. do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable persons in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion’and the jury verdict should be reinstated.
Id. [citations omitted].
Appellate review of a JNOV of general damages is a two .stage process. Ober v. Champagne, 14-170 (La.App. 5 Cir. 12/16/14), 166 So.3d 254, 260, writ denied, 15-0332 (La.4/24/15), 169 So.3d 361, Once it is determined on appeal that the trial court properly granted JNOV using the aforementioned criteria, the appellate court then moves to the second stage of review which is whether the general damage award made by the trial court is an abuse of discretion. Id.
The trial court, after granting JNOV, considers the issue of general damages de novo, and awards general damages based upon its independent assessment of the injuries and damages. Anderson v. New Orleans Pub. Serv. Inc., 583 So.2d 829, 834 (La.1991). In effect, the trial court becomes the trier of fact imbued with the wide discretion afforded to all triers of fact in fixing- general damages. Ober, supra at 260. In consequence, when *566 reviewing the amount awarded by the trial court on JNOV, the appellate court employs the same analysis it would in any quantum 114challenge. Id. In Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), the Louisiana Supreme Court explained, in detail the procedure involved in appellate review of general damage awards:
In Reck v. Stevens, 373 So.2d 498 (La.1979), this Court, commented on appellate review of general damage awards and on the “much discretion” in fixing damages accorded to trial courts by La. Civ.Code art.l934(3)(1870). The decision pointed out that the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award,; but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration.
In Reck this court disapproved of the appellate court’s simply reviewing the medical evidence and then concluding that the award for those injuries was excessive, without taking into consideration the particular effect of the particular injuries on the particular plaintiff. This court further disapproved of the use of a scale of prior awards in cases with generically similar medical injuries to determine whether the particular trier of fact abused its discretion in the awards to the particular plaintiff under the facts and circumstances peculiar-to the particular-case. The initial inquiry is whether the award for the particular injuries and their effect under the particular circumstances on the particular injured person is a clear abuse of the “much discretion” of the trier of fact [citations omitted]. Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and Then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco [supra], and through Reck to the present case is that the discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the | ^particular circumstances that the appellate court should increase or reduce the award.
Id. at 1260-61.
In essence, before an appellate court can .disturb an award made by- the factfinder, the, record -must clearly reveal that the trier of fact abused its discretion in making the award. Harvin v. ANPAC La. Ins. Co., 06-204 (La.App. 5 Cir. 10/17/06), 944 So.2d 648, 657-58, writ denied, 06-2729 (La.1/8/07), 948 So.2d 134. Only after finding that the lower court abused its discretion is a resort to prior awards by the appellate court appropriate, and then only for the purpose of determin *567 ing the highest or lowest point which is reasonably within the discretion. afforded that, court, as set forth in Coco, supra. Id. at 658; Youn, supra at 1260, .
Another point to consider in this case concerns the potential inconsistency in the jury’s damage awards. In Wainwright v. Fontenot, 00-492 (La.10/17/00), 774 So.2d 70, 76, the Louisiana Supreme Court held that a verdict awarding medical expenses yet denying, general damages is not per se invalid. Rather, a reviewing court faced with such a verdict must ask whether the jury’s determination that a plaintiff is entitled to certain medical expenses, but not to general damages, is so inconsistent as .to constitute an abuse of discretion. Id.
To begin, we must first determine whether the trial court properly granted Plaintiffs motion for JNOV. Our review of the record shows that Plaintiff testified in detail about the effect the accident had on her life, and that she experienced excruciating back pain, which ultimately reached the point where she could no longer bear it. As a result, she underwent back surgery to alleviate the pain at the recommendation of her physician, Dr. Vogel, Her treating physicians testified that the accident at issue, more probably than not, caused the herniated discs in Plaintiff’s lumbar and cervical spine, and necessitated the medical treatment they 1 ^provided. Plaintiffs treating physicians maintained their opinions regarding medical causation, even after reviewing the records from Dr. Mímeles’ prior treatment of Plaintiff for low back pain and sciatica. They further testified that Plaintiff would continue to experience flare-ups of pain requiring medical treatment, throughout her life.
Conversely, Defendants presented evidence disputing* whether the accident of April 15, 2011 caused Plaintiffs injuries, or that it required the medical treatment she received. Specifically,. Defendants introduced Dr. .Barrata’s testimony regarding the unlikelihood of injury due to the low-impact nature of the-, accident, and Dr. Laborde’s opinion- that more likely than not, Plaintiffs lumbar: disc herniations occurred during the time of her treatment with Dr. Mímeles from 2004 through 2009. Despite this evidence, our review shows that the jury nonetheless determined that Pierce’s negligence-in causing the accident of April 15, 2011 did in . fact cause: Plaintiffs injuries and awarded her past and future medical expenses. Specifically, the jury awarded-her $100,826.99 in past medical expenses, as well as $21,000 in future medical expenses. Yet, even after finding causation and awarding past and future medical expenses, the jury only awarded Plaintiff a total of $25,000 for past general damages, and did not award Plaintiff any future general damages.
Based upon our review of the record, we find that the jury’s verdict which found that the accident of April 15, 2011 caused Plaintiffs injuries. and awarded Plaintiff past and future medical expenses, but only awarded Plaintiff $25,000 in past general damages and no future general damages, is totally inconsistent in light of the record, and constitutes an abuse of discretion. See Wainwright, supra at 76. Accordingly, we find that , the trial court properly granted Plaintiffs motion for |17JNOV because the facts and inferences point so strongly , and overwhelmingly in favor of Plaintiff.
We will now address the general damages awarded - by the trial court after granting Plaintiff’s motion for JNOV. In reviewing general damage awards, the role of this Court is not to decide what we consider to be an appropriate award, but rather to review the exercise of -discretion by the trier of fact. See Youn, supra at 1260. In .this case, the trial court increased Plaintiff’s award for general dam *568 ages and loss of enjoyment of life from $25,000 to $175,000. In reviewing this case, we cannot say that the trial court’s general damage award is beyond that which a reasonable trier of fact could a's-sfess for Plaintiffs injuries and' for the effects of those injuries on her life. See Ydun, supra at 1260-61. Accordingly, we find no abuse of the trial court’s vast discretion in awarding Plaintiff $175,000 in general damages and loss of enjoyment of life in this case. Further, because we find no abuse of the trial court’s discretion, it is inappropriate and unnecessary for this Court to undertake a comparison of the award in this case with prior awards for similar injuries. See Youn, supra at 1260.

Defendants’ Assignment of Error Number Two:

In their second assignment of error, Defendants contend that the trial court erred in denying Defendants’ motion for new trial, wherein they requested reconsideration of the trial court’s decision to apply the collateral source rule to a portion of Plaintiffs medical expenses, which Defendants claim were “written-off’ by one of her medical providers, Ochsner, after Plaintiff personally paid Ochsner a reduced amount of her total bill, for which she was personally liable. On appeal, Defendants contend that because Plaintiff paid Ochsner the reduced amount of her medical expenses directly as a private-pay patient, as opposed to using a collateral source for the payment that she procured through payment of insurance premiums |1sor through some other diminution in her patrimony, the collateral source rule has no application to the amount of her medical expenses that Ochsner “wrote-off.”
This issue first arose as a motion in limine filed by Plaintiff, wherein she sought to exclude any evidence as to the source of payment for her medical expenses, under the collateral source rule. The trial court initially deferred ruling on Plaintiff’s motion in limine until trial. On the first day of trial, the trial court ruled that the collateral source rule applied and allowed Plaintiff to submit the full cost of her Ochsner medical expenses to the jury.
After the jury began deliberations, the trial court allowed Defendants to proffer evidence related to Plaintiff’s payment to Ochsner for medical expenses. Defendants proffered evidence showing that with respect to Plaintiffs January 17, 2012 Ochsner bill for medical- expenses, she paid $12,180 of the total expenses in the amount of $35,668.02. With respect to Plaintiffs January 18, 2012 Ochsner bill for medical expenses, Defendants proffered evidence showing that she paid $1,606.66 of the total charges in the amount of $19,478.68. The Ochsner bills proffered by Defendants also reflect that Plaintiff is listed as the guarantor of the bills for medical expenses. Básed on the proffered evidence, Defendants alleged that Ochsner billed Plaintiff for a total of $55,146,70 in medical expenses, but that Ochsner “wrote-off” $41,360.04 of her medical expenses, after Plaintiff. personally paid Ochsner a reduced amount of $13,786.66.
In connection with Defendants’ proffer, Plaintiff stipulated to the authenticity of the Ochsner bills, and that she is the guarantor thereof. She further stipulated that she paid the bills herself in one lump sum payment, and that as a result, Ochsner reduced her bills accordingly. However,Plaintiff disagreed with the term “write-off,” as it related to Ochsner’s reduction of her billed medical expenses.
| ^¡Defendants subsequently filed a motion for new trial as to the trial court’s application of the collateral source rule to Plaintiff’s Ochsner bills for medical expenses. Deféndants argued that the collateral source rule does not apply to Ochs-ner’s $41,360.04 reduction, or “write-off,” *569 because Plaintiff did not experience a reduction in her patrimony over and above the reduced amount that she paid— $13,786.66. Thus, Defendants • contend that the jury should have been given evidence only showing the reduced amount that Plaintiff paid to Ochsner ($13,786.66), and that she should not have been permitted to recover the total amount of Ochs-ner’s bills for her medical expenses ($55,-146.70).
After conducting a hearing on the motion, the trial court issued reasons and a judgment, denying Defendants’ motion for new trial on the issue of collateral source, providing, in pertinent part, as follows:
[Plaintiff] incurred significant medical expenses for treatment undergone at [Ochsner], all of which the jury related to the subject accident. [Plaintiff] had health insurance available but opted not to file an insurance claim. Instead, during the pendency of the litigation, [Plaintiff], who is a nurse, negotiated with Ochsner for a significant reduction of her bills in exchange for immediate payment of the reduced amount.
[[Image here]]
[T]he Court reaffirms it [sic] holding that the collateral source rule applies to the facts of this case. The collateral source rule provides that “ ‘a tortfeasor may not benefit, and an injured plaintiffs tort recovery may not be reduced, because of monies received by [or benefits conferred upon] the plaintiff from sources' independent of the tortfeasor’s procuration or contribution.’ ” Bozeman v. State of Louisiana, 879 So.2d 692, 698 (La.7/2/04).
[[Image here]]
In the instant matter, Ms. Lockett negotiated the reduction of her medical expenses of her own initiative. The consideration for that reduction was immediate payment of the reduced amount. The benefit was derived from Ms. Lockett’s individual efforts, totally independent of the tortfeasor’s procuration oh contribution. It would be contrary to the collateral source rule if [Defendants were] allowed to benefit from the bargain struck between the victim and her healthcare provider. To hold otherwise would endorse a policy of shifting the benefit of the 12nbargain made between, an injured plaintiff and their service providers, during the pen-dency of litigation, from the injured party to the tortfeasor.
This issue presents a question of law, subject to de novo review on appeal. Bellard v. Am. Cent. Ins. Co., 07-1335 (La.4/18/08), 980 So.2d 654, 663. The collateral source rule provides that a tort-feasor may not benefit, and an injured plaintiffs tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor’s procuration or contribution. Cutsinger v. Redfern, 08-2607 (La.5/22/09), 12 So.3d 945, 952 (citing Bellard v. American Central Ins. Co., 07-1335 (La.4/18/08), 980 So.2d 654, 668) (quoting Bozeman v. State of Louisiana, 03-1016 (La.7/2/04), 879 So.2d 692, 698). Under the collateral source rule, payments received from an independent source are not deducted from the award the aggrieved party would otherwise receive from the wrongdoer. Bel-lard, supra at 668 (citing Bozeman, supra). As a result, the tortfeasor is not allowed to benefit from the'victim’s foresight in purchasing insurance and other benefits. Id.
Several public policy concerns support the collateral source doctrine, but the concern most often voiced is that the tortfea-sor should not gain an advantage from outside benefits provided to the victim independently of any act of the tortfeasor. Id; (citing Louisiana Department of *570 Transportation and Development v. Kansas City. Southern Ry. Co., 02-2349 (La.5/20/08), 846 So.2d 734, 739). In this regard, the objective is to. promote tort deterrence. Id.; Cutsinger, supra at 952. An additional concern'is that, absent the collateral source rule, victims would be dissuaded from purchasing insurance or pursuing other forms of reimbursement available to them. Bellard, supra at 668.
In Bozeman v. State of Louisiana, the Louisiana Supreme Court addressed the application of the collateral source rule to medical expenses “written-off” or | ⅞1 contractually adjusted by health care providers pursuant to the federal Medicaid program. Bozeman, supra at .693. In analyzing the. issue, the Court employed the “benefit of the bargain” approach, which “award[s] plaintiffs the full value of their medical expenses, including' the ‘write-off amount, where the plaintiff has paid some consideration for the benefit of the ‘write-off amounts,” Id. at 703. The Court cited the First Circuit’s opinion in Griffin v. La. Sheriff’s Auto Risk Ass’n, 99-2944 (La.App. 1 Cm. 6/22/01), 802 So.2d 691, 715, unit denied, 01-2117 (La.11/9/01), 801 So.2d 376, wherein the First Circuit held that the collateral source rule is applicable to contractual write-offs procured by private insurance companies. Id. The Court emphasized that the rationale behind the court’s holding in Griffin is that “to the extent that the write-offs were procured through the payment of premiums, they cannot properly be considered a windfall. Rather, the write-off amount was viewed as a benefit to plaintiffs contractual bargain with her insurance provider.” Id at 703-04.
As such, the Court in Bozeman held that “[w]e embrace this reasoning for plaintiffs who have paid some consideration for the collateral source benefits, including the ‘write-off.’ ” Id. at 704. With, respect to Medicaid “write-offs,” the Court held that because Medicaid recipients do not provide any consideration for the benefits they receive, they are unable to recover Medicaid “write-off’ amounts under the collateral source rule. Id. at 705-06. However, the Court further held that “in those instances where plaintiffs patrimony[4] has been diminished in some way in order to obtain the collateral source benefits, then plaintiff is entitled to the benefit of the bargain, and may recover the full value of his medical services, including the ‘write-off amount.” Id. at 706.
| ¾⅞⅛ Bellard v. American Central Ins. Co., the Court further explained its prior holding in Bozeman as follows:
In other words, we reasoned that whether the collateral source rule applies depends to a certain extent upon whether the victim has procured the collateral benefits for himself or has in some manner sustained a diminution in his or her patrimony in order to secure the collateral benefits such that he or she is not merely reaping a windfall or double recovery.
Bellard, supra at 669. Accordingly, the Court held that after Bozeman, the two primary considerations of the collateral source rule are: (1) whether application of the rule will further the major policy goal of tort deterrence; and (2) whether the victim,, by having a collateral source available as a source of recovery, either paid for such benefit or suffered some diminution in his or her patrimony because of the availability of the benefit, such that no actual .windfall or double. recovery would result from application of the rule. Id.
*571 In a most instructive recent opinion, the Louisiana Supreme Court in Hoffman v. 21st Century North America Insurance Co.) 14-2279 (La.10/2/15), — So.3d —, 2015 WL 5776131, addressed the issue of whether a plaintiff can invoke the collateral source rule to recover medical expense “writeoffs” negotiated by the plaintiffs attorney, without the plaintiff haying diminished his patrimony. In Hoffman, the Court cited its opinion in Bozeman, wherein it held that Medicaid recipients may not collect medical expenses “written-off’ pursuant to the.federal Medicaid program because Medicaid recipients do not provide any consideration for the benefit. Id, at -, 2015 WL 5776131 at *3 (citing Bozeman, supra at 705 — 06). The Court-retted ated that “in. both Bozeman and Bellard, we emphasized a fundamental consideration for application of the collateral source rule, in addition to tort deterrence, is ‘whether the victim, by having a collateral source available as a source of recovery, either paid for such benefit or suffered some diminution in his or her patrimony | ¡^because of the availability of the benefit, such that no actual windfall or double recovery would result from application of the rule.’ ” Id. at -, 2015 WL 5776131 at *3 (citing Bellard, supra at 669).
In analyzing the attorney-negotiated write-off in Hoffman, the Court noted the following: it was undisputed that the plaintiffs attorney negotiated the write-off; the plaintiffs attorney had an “arrangement” with certain medical providers offering discounted medical services; and the plaintiff was unaware of the write-off, or of whether he had paid or given up anything in exchange for the write-off. Id. at -, 2015 WL 5776131 at *4. Based on the evidence, the Court held that “[t]he plaintiff has suffered -no diminution of his patrimony to obtain ■ the write-off, and therefore, the defendant in this case cannot be held responsible for any medical bills or services the plaintiff did not actually incur and which the plaintiff need not repay.” Id. at -, 2015 WL 5776131 at *4. Therefore, the Court adopted a bright-line rule that attorney-negotiated medical discounts obtained through the litigation process, are not payments or benefits that fall within the ambit of the collateral source rule. Id. at -, 2015 WL 5776131 at *5-*6.
In the instant case, our review of the record shows that Plaintiff incurred a total of $55,146.70 in medical expenses for treatment at Ochsner on January 17, 2012 and January 18, 2012, for which Plaintiff is listed as the guarantor. Instead of pursuing payment through her insurance provider, Plaintiff opted to personally negotiate with Ochsner to obtain a reduction of the total amount of medical expenses that she was obligated to pay. Plaintiff stipulated that after she paid Ochsner a lump sum of $13,786.66 of the total amount of medical expenses, Ochsner reduced her bills for medical expenses accordingly. Unlike the facts- of the Hoffman case, in this case, it is undisputed that Plaintiff negotiated, and paid for, the reduction through her own efforts and with her own funds, without the involvement of her attorneys. Furthermore, it is also undisputed that Plaintiff | ^received the reduction from Ochsner, totally independent of Defendants’ procu-ration or contribution.
After reviewing the record in light of the foregoing jurisprudence, -we find that the collateral source rule applies to Plaintiffs bill from Ochsner for $55,146.70 in medical expenses, such that she was entitled to recover the full amount of those expenses. Specifically, as a result of Plaintiffs own initiative in personally negotiating with Ochsner, she obtained the benefit of a reduction in the total amount of medical expenses, that she was obligated to pay as *572 the guarantor. In exchange for this benefit, Plaintiff was required to provide consideration, which consisted of a payment to Ochsner of $13,786.66 of her own money, towards the total amount of medical expenses she was obligated to pay. •
As set forth by the Court in Bozeman, “where plaintiffs patrimony has been diminished in some way in order to obtain the collateral source benefits, then plaintiff is entitled to the benefit of the bargain, and may recover the full value of his medical services, including the ‘write-off amount.” Bozeman, supra at 706. Accordingly, we find that under the collateral source rule, Plaintiffs payment to Ochsner of $13,786.66" of her own funds clearly diminished her patrimony, which she suffered in order to receive the collateral benefit from Ochsner of reducing, or “writing-off,” her bill for the medical expenses she was obligated to pay by more than $40,000. In accordance with Bozeman, we find that under the facts of this "case, Plaintiff is entitled to the benefit of her bargain with Ochsner, and thus, she was entitled to recover the full cost of her medical expenses, including the reduced of “written-off’ amount, under the collateral source rule.
We find Defendants’ argument that Plaintiffs patrimony was somehow not diminished because she made the $13,786.66 payment to Ochsner directly, as opposed to going through her insurance provider for payment, is inconsistent with |asthe Court’s holding in Bozeman. It is well-settled that under the collateral source rule, the tortfeasor is not allowed to benefit from the victim’s foresight in purchasing insurance and other benefits. See Bel-lard, supra at 668 (emphasis added). As such, we agree with- the trial court’s conclusion that it would be contrary to the purpose of the collateral source rule to allow Defendants to benefit from Plaintiffs bargain with Ochsner, which consisted of an early payment with no-contribution by Defendants, that Plaintiff personally negotiated and paid for. Therefore, we find no error in the trial court’s determination that the collateral source rule applies to the amount of Plaintiffs medical expenses reduced,' or “written-off’ by Ochsner, or in the -trial court’s denial of Defendants’ motion for new trial.

Defendants’ Assignment of Error Number Three:.

In their third assignment of error, Defendants contend that the trial court erred in granting the motions for sanctions, attorney’s fees and costs, filed by Plaintiffs treating physicians, Vogel AMC and HCC. This issue arose during the discovery phase of the litigation, when De-' fendants contend that they determined it was necessary to" issue subpoenas duces tecum and notices of corporate depositions to Vogel AMC and HCC, to explore potential bias and/or financial motives with respect to their treatment of personal injury plaintiffs represented by Plaintiffs counsel of record, the Womac firm.
Vogel AMC and HCC retained their own counsel, respectively, to assist them in responding to, and defending against, the discovery propounded upon them by Defendants. Defendants responded by filing a motion to compel Vogel AMC and HCC to respond to the subpoenas duces tecum and the corporate deposition notices. On March 24,- 2014, the- trial court signed an order granting in part and denying in part Defendants’ motion to compel, thereby limiting the permissible | ^scope of the corporate depositions and the subpoenas to specific areas of inquiry. '■ Following the corporate • depositions, Defendants, Vogel AMC, and HCC each filed their own motions for sanctions, attorney’s fees, and costs.
*573 On May 29, 2014, the trial court held a hearing on the motions for sanctions, filed by Defendants, Vogel AMC, and HCC. At the hearing, Vogel AMC and HCC argued that Defendants subjected them to unwarranted and excessive discovery, and that Defendants failed to comply with the trial court’s March 24, 2014 order limiting the scope of the corporate depositions. The trial court denied Defendants’ motion for sanctions on the following day, but held Vogel AMC’s and HCC’s motions under advisement. On the morning of trial, June 9, 2014, the trial court granted the motions for sanctions filed by Vogel AMC and HCC in open court, but deferred determining the amount of the sanctions until after trial. Accordingly, on July 29, 2014, the trial signed a judgment granting the motions for sanctions, attorney’s fees, and costs filed by Vogel AMC and HCC, and provided as follows:
Based on the usually [sic] contentious pre-trial discovery disputes between counsel, non-party movers (the plaintiffs treating physicians) were forced to litigate excessive and unwarranted discovery propounded upon them. Based on their having suffered undue burden and expense in defending against certain of these discovery requests, the court granted sanctions as follows: •
IT IS ORDERED, ADJUDGED AND DECREED [Vogel AMC]’s Motion for Sanctions, Attorney’s Fees, and Costs is hereby GRANTED in the amount of Fourteen Thousand, One Hundred, Eighty-Four and' 50/100 DOLLARS ($14,184:50);
IT IS ORDERED, ADJUDGED AND DECREED [HCCJ’s Motion for Sanctions, Attorney’s Fees, and Costs is hereby GRANTED in the amount of Five Thousand, Sixty-One and 75/100 DOLLARS ($5,061.71).
As we have stated herein, Defendants initially challenged the merits of the trial court’s grant of Vogel AMC’s and HCC?s motions for sanctions, attorney’s l^fees, and costs. However, Defendants subsequently filed, for the first time on appeal, an exception of no right of action, asserting that Vogel AMC and HCC have no right of action to seek sanctions under La. C.C.P. art. 1420(D) because they are not parties to this litigation.
We will first address Defendants’ exception of no right of action. The exception of no right of action is-peremptory and can be brought at any time, including on appeal. Dufrene v. Ins. Co. of the State of PA., 01-47 (La.App. 5 Cir. 5/30/01), 790 So.2d 660, 668.
La. C.C.P. art. 1420 governs the signing of discovery requests and sanctions for certifications that are in violation thereof. Beard v. Beard, 01-1381 (La.App. 5 Cir. 5/15/02), 821 So.2d 45, 50. La. C.C.P. art. 1420(B) provides as follows:
The signature of an attorney or party constitutes a certification by him that he has read the request, response, or objection and that to the best of his knowledge, information, and belief formed after reasonable inquiry the request, response, or objection is:
(1) Consistent with all the rules of discovery and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law;
(2) Not interposed for any improper purpose, such as to harass or to cause unnecessary or needless increase in the cost of litigation; and
(3) Not unreasonable, unduly burdensome, or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, *574 and the importance of the issues at stake in the litigation.
Article 1420(D) provides as follows:
If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the Infilling of the request, response, or objection, inelud-ing a reasonable attorney’s fee.
(Emphasis added.)
In Thiel v. State Farm Mutual Auto. Ins. Co., 14-879 (La.App. 5 Cir. 5/28/15), 171 So.3d 375, writ denied, 15-1259 (La.10/9/15), — So.3d -, 2015 WL 6458104 (unpublished writ denial), this Court recently addressed whether the plaintiffs treating physician, as a non-party mover, had a right of action for sanctions under La. C.C.P. art. 1420(D). Just as in the present case, the plaintiffs treating physician, OCCL, requested sanctions based upon the defendants’ issuance of subpoenas duces tecum and corporate deposition notices in an effort to explore potential bias and financial motives of OCCL in treating personal injury plaintiffs represented by the plaintiffs counsel of record. Id. In Thiel, this court held that pursuant to La. C.C.P. art. 1420(D), “the request for, sanctions may only be heard or determined ‘upon motion of any party’ or the court’s own motion.”. Id.
Because statutes which authorize the imposition of penalties, or sanctions, are to be strictly construed, this Court held that La. C.C.P. art. 1420 must be strictly construed. Id. (citing Maxie v. McCormick, 95-1105 (La.App. 1 Cir. 2/23/96), 669 So.2d 562, 565; Fauna v. Dwyer, 02-2320, 02-2418 (La.App. 4 Cir. 9/24/03), 857 So.2d 1138, 1146). Accordingly, because OCCL was not a party to the litigation, this Court held that OCCL had no right of action for sanctions against the defendants under La. C.C.P. art. 1420(D), and thus, vacated the trial court’s judgment awarding sanctions to OCCL. Id. Recently, on October. 9, 2015, the Louisiana Supreme Court denied OCCL’s application for writ of certiorari regarding this Court’s opinion in Thiel[5] Id.
| ^Moreover, in Thiel, this Court relied upon our opinion in Voitier v. Guidry, 14-276 (La.App. 5 Cir. 12/16/14), 166 So.3d 262, writ denied, 15-0118 (La.4/10/15), 176 So.3d 1032, wherein this- Court held that a non-party mover had no right of action-for sanctions under La. C.C.P; art. 863(D) because, just as in La. C.C.P. art. 1420(D), Article 863(D) also provided that a motion for sanctions may only be heard “upon motion of any party or upon its [the court’s] own motion ...” Id. at 272¡
*575 In. the present case, -just as in Thiel and Voitier, neither Vogel AMC, nor HCC are parties to this litigation, as evidenced by their, respective motions for sanctions wherein they refer to themselves as non-parties. In light of this Court’s holdings in Thiel and Voitier, we find that as non-parties to this action and pursuant to La. C.C.P. -art. 1420(D), Vogel AMC and HCC have no right of action for sanctions, attorney’s fees, and costs against Defendants:
Vogel AMC argues that the trial court had sources of authority, other'than that of La. C.C.P. art. 1420(D), which permitted the trial court to award them attorney’s fees and costs, pursuant to their motions for sanctions. Specifically, Vogel AMC points to sanctions under La. C.C.P. art. 1420(D) awarded pursuant to the court’s own motion; sanctions under La. C.C.P. art. 1471 for violation of a discovery order; the inherent power, of the trial court; and-a finding of constructive contempt under La. C.C.P. art. 224(2). However, our review shows that under the facts and circumstances of this case, those, sources of authority would not have authorized the trial court to award non-parties, such as Vogel AMC and HCC, the sanctions they seek — attorney’s fees and costs.
|anIt is manifest in Louisiana jurisprudence that attorney’s fees are not recoverable unless authorized by contract or statute. Peyton Place Condo. Assocs. v. Guastella, 08-365 (La.App. 5 Cir. 5/29/09), 18 So.3d 132, 146. Vogel AMC contends that even if it is precluded from bringing a motion for sanctions, attorney’s fees and costs under La. C.C.P. art. 1420(D) as a non-party, the trial court could have done so on its own motion. However, La. C.C.P. art. 1420(D) provides that the sanctions that a “court shall impose'upon the person who made.the certification or the represented party, or both” for a violation of La. C.C.P. art. 1420 consists of “an appropriate sanction which may include an order to pay the other, party or parties the amount of the reasonable expenses incurred because of the filing of the request, response, or objection, including a reasonable attorney’s fee.” Therefore, even if the trial court had determined that Defendants violated La. C.C.P. art. 1420 on its own motion, which it did not do in this case, La. C.C.P.-art. 1420(D) limits an award of attorney’s fees to parties. Accordingly, we find that La. C.C.P. art. 1420(D) does not provide for an award of attorney’s fees to nonparties,, such as Vo-gel AMC and HCC, pursuant to the court’s own motion.
Vogel AMC further contends that La. C.C.P. art. .1471 does not limit who may move for sanctions for a violation of a discovery order. . Although we agree, there is no indication in the record that the trial court found that Defendants failed to comply with its March 24, 2014 discovery order, as Vogel AMC contends.
La. C.C.P. art. 1471(A) and (C) provide, in pertinent part, that if a party fails to obey an order to provide or permit discovery, including an order compelling discovery, “the court shall require the party failing, to obey the order or the attorney advising .him or both to pay reasonable expenses, including attorney’s fees, caused by the failure, unless, the court-finds that the failure was justified or other circumstances make an award of expenses unjust.”. Because La. C.C.P. art. 1471 Didoes not, contain limiting language prohibiting non-parties from- moving for, or receiving, an .award of, attorney’s fees based upon a party’s violation of a discovery order, we find that the trial court did have the authority to award attorney’s fees to Vogel AMC, as a non-party, under that article.
However, contrary to Vogel AMC’s contention,, our review of the record does not show that the trial court, in granting Vogel *576 AMC’s and HCC’s motions for sanctions, attorney’s fees and costs, concluded that Defendants violated the trial court’s March 24, 2014 discovery order related to the corporate depositions of Vogel AMC and HCC. ■ Rather, our review shows that the trial court granted Vogel AMC’s and HCC’s motions for sanctions, attorney’s fees, and costs, based upon its finding that Defendants engaged in unwarranted and excessive discovery, and not on Defendants’ alleged violation of a discovery order. Specifically, in the July 29, 2014 judgment, 'the trial court found that due to the “contentious pre-trial discovery disputes between counsel, [Vogel AMC] and [HCC] were forced to litigate excessive and unwarranted discovery propounded upon them.” Accordingly, “[b]ased on their having suffered undue burden and expense in defending against certain ■ of these discovery requests,” the trial court granted Vogel AMC’s and HCC’s motions for sanctions, attorney’s fees, and' costs.
“It is well settled that where a judgment is silent as to any part of a demand or any issue that was litigated, that demand is deemed rejected.” S. Marine Sales, Inc. v. Matherne, 05-181 (La.App. 5 Cir. 11/29/05), 915 So.2d 1042, 1047, writ denied, 06-0177 (La.4/24/06), 926 So.2d 545. Therefore, we must deem the trial court’s silence as to whether Defendants violated the March 24, 2014 discovery order, to be a rejection of that claim. Accordingly, we find that the trial court did not grant Vogel AMC’s and HCC’s motions for sanctions, and award them attorney’s fees and costs pursuant tó La. C.C.P. art. 1471. '
[^Similarly, we do not find, as Vogel AMC suggests, that the trial court had the inherent power to award attorney’s fees in this case. Because it is manifest in Louisiana jurisprudence that the trial court is limited to awarding attorney’s fees only where such an award is authorized by contract or statute, we reject Vogel AMC’s argument that the trial court is inherently possessed with the power to award attorney’s fees. See Peyton Place Condo. Assocs., supra. However, we do find that the trial court has the power to hold any person, regardless of whether the person is a party, in contempt of court, the appropriate sanctions -being defined in those statutes.
Vogel AMC further contends that the trial court had the authority to hold Defendants in constructive contempt under La. C.C.P. art. 224(2)[6] for Defendants’ alleged willful disobedience of a court judgment or order. Although we agree that the trial court has the authority to hold any person in constructive contempt, including Defendants, there is no indication in the record that the trial court did so in this case. Even if the trial court had found Defendants guilty of constructive contempt, the punishment for such contempt does not include an award of attorney’s fees or costs. Rather, the trial court may punish a person found guilty of constructive contempt, as follows: (1) by a fine of not more than five hundred dollars, or (2) imprisonment for not more than three months, (3) or both; or (4) in addition to or in lieu of a fine or imprisonment, the court may order the person to perform litter abatement work or community service in a court-appointed program for each day he was to be imprisoned. See La. C.C.P. art- 227; La. R.S. 13:4611(l)(d)(i-ii). Therefore, we find that a finding of constructive contempt under La. C.C.P. art. *577 224 by the trial court would not have authorized the trial |a3court to award Vogel AMC and HCC attorney’s fees and costs, pursuant to their motions for sanctions.
In sum, this lawsuit was brought by Plaintiff, Natalie Lockett, and not by her non-party treating physicians. Therefore, for the foregoing reasons and as per the legislative dictates, we find that as non-parties to this action, Vogel AMC and HCC have no right of action for sanctions, attorney’s fees, and costs against Defendants under La. C.C.P. art. 1420(D). Furthermore, with no finding by the trial court of a violation of a discovery order by Defendants, an award in favor of Vogel AMC and HCC for sanctions, attorney’s fees, and costs under La. C.C.P. art. 1471 would not have been appropriate.
Accordingly, because we find that the trial court was without authority to award Vogel AMC or HCC sanctions, attorney’s fees, and court costs as set forth in the July 29, 2014 judgment, Defendants’ remaining assignment of error regarding the merits of the July 29, 2014 judgment is rendered moot.

Vogel AMC’s and HCC’s Request for Damages for Frivolous Appeal

Vogel AMC and HCC seek damages under La. C.C.P. art. 2164 against Defendants for filing a frivolous appeal. Although La. C.C.P. art. 2164 provides for damages for frivolous appeals, such damages are not proper where the party does not appeal or answer the appeal pursuant to La. C.C.P. art. 2133. Innocence Project Neto Orleans v. New Orleans Police Dep’t, 13-0921 (La.App. 4 Cir. 11/6/13), 129 So.3d 668, 676. “An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant.” La. C.C.P. art. 2133 (emphasis added). Because Vogel AMC and HCC have failed to file an answer to this appeal, their requests for' sanctions for frivolous appeal are procedurally barred.
^Nevertheless, we emphasize that frivolous appeal damages are allowed only when it is obvious that the appellant took the appeal solely for the purpose of delay or that counsel is not sincere in the view of the law he advocates. Seminary v. DuPont, 09-1082 (La.App. 5 Cir 5/11/10), 41 So.3d 1182, 1188, writ denied, 10-1336 (La.9/24/10), 45 So.3d 1077. Based upon our review, we find that damages for frivolous appeal are not warranted in this case.
CONCLUSION
For foregoing reasons, we affirm the trial court’s July 15, 2014 judgment signed pursuant to the jury’s verdict, the September 18, 2014 judgment granting Plaintiffs motion for JNOV, and the September 8, 2014 judgment denying Defendants’ motion for new trial on the collateral source ruling. We sustain Defendants’ exception of no right of action, and thus, we vacate the trial court’s July 29, 2014 judgment granting Vogel AMC’s and HCC’s motions for sanctions, attorney’s fees and costs. We deny Vogel AMC’s and HCC’s request for damages for frivolous appeal under La. C.C.P. art. 2164.
AFFIRMED IN PART; VACATED IN PART
JOHNSON, J., concurs with reasons.

.Prior to trial, counsel for Defendants stipulated that UVL is vicariously liable for any negligence of Pierce while driving as a lease operator for UVL.

. Plaintiff’s treating physician, Dr. Vogel is employed by Vogel AMC.

. Plaintiff’s treating physician, Dr. Kang is ■employed by HCC.

. The civil law concept of patrimony includes the total mass of existing or potential rights and liabilities attached to a person for the satisfaction of his economic needs. Lanza v. Lanza, 04-1314 (La.3/2/05), 898 So.2d 280, 282.

. In their oppositions to Defendants' exception of no right of action, Vogel AMC and HCC cite this Court’s prior opinion in Sternberg v. Sternberg, 97-101 (La.App. 5 Cir. 5/28/97), 695 So.2d 1068, writ denied, 97-1737 (La. 10/13/97), 703 So.2d 618, wherein this Court upheld on the merits an award of sanctions in favor of a non-party, and against an attorney representing a party, under La. C.C.P. art. 863. However, in Sternberg, there is no indication that this Court addressed, or even considered, the preliminary issue of whether the non-party mover in that case had a right of action for sanctions under La. C.C.P. art'. 863. This issue, as it relates to La. C.C.P. art. 1420(D), has been brought squárely before this Court in the instant appeal, just as in Thiel, by virtue óf Defendants’ exception of no right of action. In light of the Louisiana Supreme Court’s recent denial of writs on this very issue in Thiel, we do not find Stem-berg instructive as to whether non-parties have a right of action for sanctions under La. C.C.P. art. 1420(D).

. La. C.C.P. art. 224(2) defines constructive contempt as "any contempt other than a di- ■ rect one,” and that it includes a "[w]ilful disobedience of any lawful judgment, order, mandate, writ, or process of the court.”